36 F.3d 1097
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Howard E. GRIBBLE, Plaintiff-Appellant,
v.
CIGNA HEALTHPLAN OF TENNESSEE, INC., Defendant-Appellee.
 No. 93-6115.
 United States Court of Appeals, Sixth Circuit.
 Sept. 20, 1994.
 
 Before: GUY and BOGGS, Circuit Judges; and CLELAND, District Judge.
 PER CURIAM.
 
 
 1
 This ERISA appeal arises from an employee's health-insurance claim for coverage of certain dental work, including dentures, that he needed after an automobile accident. The health-insurance policy excluded dental coverage, but it allowed certain exceptions to the exclusion. In response to the employee's application for coverage, the insurer asserted that the policy unambiguously excluded the dental services he claimed. The employee, Gribble, then filed this action. The parties stipulated to the facts, and both sides moved for summary judgment. The district court denied plaintiff's motion and granted summary judgment to the insurer. We affirm.
 
 
 2
 * Appellant Gribble claims that CIGNA Healthplan of Tennessee, Inc. ("CIGNA"), breached its insurance contract, in violation of the Employee Retirement Income Security Act ("ERISA"),[1] when it denied coverage for dentures that he needed as a direct result of an automobile accident in which he was injured. Gribble had obtained his CIGNA health-insurance policy through his employer, Haverty Furniture. The "Group Master Contract" ("the policy") into which CIGNA and Haverty Furniture had entered, specifically excluded dental services from coverage, stating that coverage is not provided for:
 
 
 3
 [d]ental [s]ervices related to the care, filling, removal or replacement of teeth. Treatment of injuries to or diseases of the teeth or gums, including services related to accidental injury to teeth, extraction of impacted wisdom teeth, malocclusion or malposition of the teeth or jaws; and any other dental services unless specifically provided for in the Schedule of Benefits.
 
 
 4
 Group Master Contract Sec. 4, p 24 ("Paragraph 24") (emphasis added). In a separate paragraph, the policy stated that coverage is not provided for:
 
 
 5
 [c]are and treatment of the teeth, or periodontium, except for oral surgery for tumors or injuries to the jawbone or surrounding tissue and the initial stabilization and emergency treatment of acute accidental trauma to sound, natural teeth provided within 48 hours of the accident.
 
 
 6
 Group Master Contract Sec. 3, p 5 ("Paragraph 5") (emphasis added). Thus, while excluding dental care, the policy also designated limited exceptions to that exclusion.
 
 
 7
 In January 1991, while insured under the policy, Gribble was injured in an automobile accident. He was treated by Dr. Urbanek, an oral surgeon, who provided services to repair mandibular (jawbone) injuries that Gribble sustained. CIGNA covered the costs of Dr. Urbanek's services. Subsequently, Gribble required "follow-up care" for oral damage directly resulting from the accident, and Dr. Urbanek referred him to Dr. Bonvissuto, a dentist. Dr. Bonvissuto examined Gribble in October 1991, nine months after the incident. The dentist determined that Gribble required both upper and lower dentures.[2] Nevertheless, while not challenging the validity of the dentist's diagnosis, CIGNA refused to pay for the provision of dentures that Dr. Bonvissuto recommended. Therefore, Gribble filed this ERISA action in district court.
 
 
 8
 Gribble contends that Paragraph 5 covers "oral surgery for tumors" or, as a separate matter, "[all expenses for] injuries to the jawbone." However, CIGNA denied Gribble's claim, explaining that Paragraph 5 should instead be read as providing for "oral surgery[: (1) ] for tumors or [ (2) for] injuries to the jawbone...." CIGNA took the position that the proposed denture treatment is not a covered benefit because: (1) it does not entail oral surgery; (2) it treats teeth, not tissue; and (3) it was not rendered within 48 hours of the accident under the terms and circumstances that are set forth in Paragraph 5. Consequently, although the treatment plan may have been appropriate, it entailed the replacement of teeth, which is simply not a covered benefit under the plan. Furthermore, the policy specifically excludes services "related to accidental injury to teeth," p 24, except for those services that are rendered "within 48 hours of the accident." p 5.
 
 
 9
 Presented with this dispute over the proper construction of the insurance policy's terms, the district court first looked at the plain meaning of the disputed text, following the guidance of Tennessee substantive law. If the terms of an insurance policy are ambiguous, those terms should be construed against the insurer and in favor of the insured. Goodson v. American Home Assurance Co., 251 F.Supp. 125, 128 (E.D.Tenn.1966), modified on other grounds, 381 F.2d 6 (6th Cir.1967). However, an unambiguous policy must be applied as it reads. Estate of Clement, 414 S.W.2d 644, 646 (Tenn.1967). Thus, the threshold question facing the court was whether the policy is ambiguous.
 
 
 10
 The district court found that the plain language of the contract's exclusions unambiguously bars coverage of teeth replacement. Paragraph 24 of the policy exclusions states that the replacement of teeth will not be covered. This paragraph further excludes treatment related to accidental injury to the teeth. Thus, dentures are not covered even when necessitated by accidental injury to the teeth. The court continued:
 
 
 11
 Plaintiff's view requires a strained reading of Paragraph 5 to whittle out an exception for any kind of treatment for injury to the jawbone and surrounding tissue. First, the words "oral surgery for" clearly modify the words "injuries to the jawbone and surrounding tissue." Use of the word "or" before the word "injuries" indicates that "oral surgery for" was meant to modify "injuries to the jawbone" because otherwise a comma or the word "and" would have been appropriate.... Use of the word "or" before "injuries to the jawbone" makes no sense unless it is meant to indicate that "oral surgery for" modifies "injuries to the jawbone and surrounding tissue." The choice of punctuation indicates that a separate exception for any treatment to the injured jawbone and surrounding tissue was not intended.
 
 
 12
 ....
 
 
 13
 ... A normal, everyday understanding of "tissue surrounding the jawbone" would not include the teeth. Therefore, even if the [c]ourt were to accept Plaintiff's strained interpretation of dental care coverage, this interpretation would not necessitate coverage of teeth replacement.
 
 II
 
 14
 This court reviews the granting of a motion for summary judgment under a de novo standard. Homeowners Group, Inc. v. Home Marketing Specialists, Inc., 931 F.2d 1100, 1104 (6th Cir.1991). Summary judgment is appropriate only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476-80 (6th Cir.1989). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Upon meeting this burden, the burden shifts to the nonmoving party, who must present some "specific facts showing that there is a genuine issue for trial." Id. at 324.
 
 
 15
 In this case, there are no disputed facts. The entire dispute is focused on the meaning of Paragraphs 5 and 24 of the CIGNA health policy. In ERISA cases, "where a disputed term is unambiguous, [courts] presume its natural meaning to be conclusive evidence of [the parties'] intent." Bellino v. Schlumberger Technologies, Inc., 944 F.2d 26, 30 (1st Cir.1991). In this case, CIGNA has specifically and carefully limited coverage for dental services. Gribble's proposed denture treatment falls outside that coverage.
 
 III
 
 16
 In the alternative, Gribble argues that a typical person should not be held to the terms of all the many provisions that are contained in a 51-page policy:
 
 
 17
 The exclusion in this case is not only vague, it is also buried in a paragraph consisting of less than sixty words on page 49 of a contract that is 51 pages in length. No reasonable policyholder should be expected to scrutinize such a policy in depth to determine what exact coverage is available to him; he would only expect that he would be indemnified for reasonable services incurred.
 
 
 18
 However, as the district court held, "a person cannot avoid a written contract into which he has entered on the ground ... he did not attend to its terms, that he did not read the document." As a general rule in Tennessee, "[a]n insured is charged with knowledge of the contents of an insurance contract he signs." Carter v. American Republic Ins. Co., 1991 WL 135468, at * 7 (Tenn.App. July 25, 1991). Moreover, the exclusions and limitations were clearly set out under bold and capitalized headings, and the reader was repeatedly directed to read the limitations and exclusions to coverage. CIGNA made no attempt to hide the limitations on dental coverage, nor did it use obscure language in explaining the limitation. Thus, Gribble may not avoid the limitations delineated in the policy.
 
 IV
 
 19
 As a separate matter, Gribble asked the district court to award him attorney's fees under ERISA's policy that can facilitate lawsuits that seek to enforce and defend employees' benefits. ERISA provides that "[i]n any action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow reasonable attorney's fees and costs of action to either party." 29 U.S.C. Sec. 1132(g)(1). Thus, in contrast to such fee-shifting statutes as those that govern lawsuits brought under the Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d)(1)(A); the Equal Pay Act, 29 U.S.C. Sec. 216(b); and the Civil Rights Act, 42 U.S.C. Sec. 1988(b); this statutory provision allows an award of fees to a plaintiff or a defendant, under appropriate circumstances, without technical insistence on concepts such as being a "prevailing party." Those circumstances are assessed on the basis of five factors:
 
 
 20
 (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.
 
 
 21
 Armistead v. Vernitron Corp., 944 F.2d 1287, 1301 (6th Cir.1991) (quoting Secretary, Dep't. of Labor v. King, 775 F.2d 666, 669 (6th Cir.1985)); see also Eaves v. Penn, 587 F.2d 453 (10th Cir.1978). Attorney's fees should not be awarded as a matter of course in ERISA cases. 944 F.2d at 1302-03.
 
 
 22
 The district court analyzed Gribble's application for fees against the five factors and concluded that his request should be denied. First, it cannot be said that CIGNA acted in bad faith by refusing coverage for an excluded benefit. In fact, it was right. Second, while the insurer can clearly satisfy an award of attorneys' fees, so can almost every winning ERISA defendant. Thus, the second factor is weighed more for exclusionary than for inclusionary purposes. Third, Gribble's suit would not deter other insurers from denying excluded claims, although it could alert CIGNA's editors to review all their policies even more closely for possible accusations of ambiguity. Again, every suit by an insured that turns on textual construction will have that effect. Fourth, Gribble's action sought only private benefit, and does not raise any significant legal questions. Fifth, a look at the plain, unambiguous meaning of the policy indicates that Gribble's claim, though touching a sympathetic chord, did not have the same merits as the defense mounted by CIGNA. While there is no explicit rule that a losing plaintiff, as in this case, could not get a fee award, the scheme does not really entertain the possibility, and no reported case has granted such fees. The first, third, and fifth factors would always weigh against an award. The second and fourth factors serve mostly as possible checks on an award to an otherwise worthy claimant, and are thus inapplicable.
 
 V
 
 23
 As the district court observed, "a careful, and perhaps even a cursory, reading of the policy would have indicated that a supplemental dental plan was necessary." The court properly granted summary judgment for the insurer and properly denied Gribble's request for an award of attorneys' fees. For the foregoing reasons, we AFFIRM.
 
 
 24
 CLELAND, District Judge, dissenting.
 
 
 25
 The majority relies on the district court's analysis of Gribble's argument concerning Limitations p 5. I agree with the district court's conclusion that "oral surgery for" modifies "tumors", "injuries to the jawbone" and "injuries to surrounding tissue." However, this determination does not answer the ultimate question of whether the proposed treatment is covered. In my opinion, the district court's--and the majority's--failure to consider the significance of the clause "care and treatment of the teeth " results in the erroneous conclusion that coverage is not available for Gribble's treatment. I therefore respectfully dissent.
 
 
 26
 The majority accurately quotes Paragraph 24 of the Exclusions. Because the real issue in this case involves interpretation of Limitations p 5, it will be repeated here.
 
 Limitations p 5 reads as follows:[1]
 
 27
 SECTION 3. LIMITATIONS--The following services are limited as described below.
 
 
 28
 * * *
 
 
 29
 * * *
 
 
 30
 5. Care and treatment of the teeth, or periodontium, except for oral surgery for tumors or injuries to the jawbone or surrounding tissue and the initial stabilization and emergency treatment of acute accidental trauma to sound, natural teeth provided within 48 hours of the accident.
 
 
 31
 Group Master Policy, Section 3, p 5; page 46.
 
 
 32
 I see two conceivable ways to interpret Limitations p 5. One interpretation is that all dental services are excluded except certain specified oral surgeries. This appears to be the interpretation adopted by the district court and the majority. The other is to say that care and treatment of the teeth are excluded except in situations that require these certain specified oral surgeries.[2]
 
 
 33
 These interpretations yield different results, and for that reason it could be argued that, at a minimum, this clause is ambiguous. In such cases, trust law requires ambiguities to be construed in favor of beneficiaries, which in this case would be the employee-plaintiff. See Blair v. Metropolitan Life Ins. Co., 974 F.2d 1219, 1222 (10th Cir.1992) which adopts the position of the Second Circuit as stated in Masella v. Blue Cross & Blue Shield, Inc., 936 F.2d 98, 107 (2d Cir.1991).
 
 
 34
 It is my opinion, however, that Limitations p 5 is subject to but one reasonable interpretation--the latter of the two noted above--because Limitations p 5 would be mere surplusage if it did not provide for treatment to the teeth in cases requiring oral surgery resulting from injury to the jawbone. This paragraph was not included in order to provide coverage for oral surgeries--the Schedule of Benefits already provides such benefits. See, Group Master Policy, page 32, providing coverage for surgeries performed by a specialist (in this case, an oral surgeon).
 
 
 35
 The reasonable interpretation of Limitations p 5 is that which provides care and treatment to the teeth when there is injury to the jawbone (or injuries to the surrounding tissue or tumors) which requires oral surgery. This not only reflects the plain language of the clause, it also accurately reflects the true "intent" of the parties as expressed in the Schedule of Benefits, Limitations p 5 and Exclusions p 24; i.e., that surgeries (including oral surgeries) are covered and that dental services are not covered except when made necessary because of significant damage to the jawbone requiring oral surgery. Injuries of this type differ markedly from "accidental damage to the teeth," coverage for which is explicitly excluded by Exclusions p 24 (emphasis added).
 
 
 36
 The construction adopted by the majority would allow for no circumstance, save one[3], under which care and treatment of the teeth is covered. I believe that this interpretation flies in the face of the plain language of the limitations clause. The grammatical construction of the clause indicates that there are indeed situations in which care and treatment of the teeth are available ("care and treatment of the teeth, or periodontium, [are excluded] except...." See footnote 1 hereunder). Oral surgery to the jawbone or surrounding tissues would never involve the teeth.
 
 
 37
 The majority's construction fails to honor an important tenet of contract construction: Ut res magis valeat quam pereat (that the thing may rather have effect than be destroyed). See, e.g., Kelly v. Calhoun, 95 U.S. 710, 713-714 (1878) ("Instruments like this should be construed, if it can be reasonably done, ut res magis valeat pereat. It should be the aim of courts, in cases like this, to preserve and not to destroy."); De Sisto College, Inc. v. Howey-In-The-Hills, 706 F.Supp. 1479 (M.D.Fla1989) (applying the maxim in statutory interpretation: "The final principle of statutory construction applicable to this case requires a court ... to construe the statute to give each of the statute's provisions effect, ut res magis valeat quam pereat ... A construction that would leave any part of the language in a statute without effect should be rejected."). Here, the introductory phrase "care and treatment of the teeth, or periodontium" is present for some purpose; that purpose, in my judgment, is to describe circumstances under which treatment of the teeth, or treatment to the periodontium, may indeed be covered. The majority's view reads these words out of the contract,[4] and that result is not reconcilable with the tenets of construction.
 
 
 38
 Here, had Gribble merely desired a new set of dentures or any type of dental work, he would be out of luck unless he had a supplemental dental plan. However, the record clearly reveals he suffered an injury to the jawbone which required oral surgery. In support of his motion for summary judgment, Gribble submitted an affidavit by Dr. Urbanek, the oral surgeon, in which Dr. Urbanek averred that Gribble's "dental problems are very serious and resulted from the injury to his jawbone." Plaintiff's Motion for Summary Judgment, Ex. A; JA-113. The defendant presented no evidence to contradict Dr. Urbanek's assessment. This adequately shows a proposed plan for "care and treatment of the teeth" resulting from "oral surgery for ... injuries to the jawbone or surrounding tissue" which, within that set of limitations, is covered by this policy.
 
 
 39
 I respectfully suggest that the district court erred in granting the defendant's motion for summary judgment. I would reverse and remand the issue of an attorney's fee award for redetermination in light of the opinion expressed here.
 
 
 
 *
 The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Employee Retirement Income Security Act of 1974, Pub.L. No. 93-406, 88 Stat. 832 (codified, as amended, at 29 U.S.C. Secs. 1001-1461)
 
 
 [2]
 CIGNA paid for the diagnostic visit to Dr. Bonvissuto because of the possibility that the dentist's examination might result in his recommending a covered plan of treatment
 
 
 [1]
 I am compelled to point out the unusual grammatical structure of Limitations p 5. Although the majority declares this language "clearly set out," the Limitation does not constitute a complete sentence and therefore requires additional terms in order to make it readable. The majority was constrained to create lead-in language before quoting the text of the Limitation; viz., "the policy stated that coverage is not provided for...." The majority could as easily have filled in the words "are excluded" at the end of "Care and treatment of the teeth, or periodontium...." The point is that inartful drafting of Limitations p 5 makes it less than clear what the parties intended to embody in the Policy. All but one of the other Limitations under Section 3 of the Policy are complete sentences and accurately describe, first, what is excluded and, second, the limitations to the exclusion
 
 
 [2]
 For brevity's sake, the certain specified oral surgeries will be referred to as oral surgeries for injuries to the jawbone as this is the injury relevant to the case at hand
 
 
 [3]
 The majority notes the final provision of Limitations p 5 which allows emergency treatment for "acute trauma to sound natural teeth," if provided within 48 hours of accidental injury
 
 
 [4]
 Limitations p 5, under the majority's analysis, would be amended to read: "Section 3. LIMITATIONS--The following services are limited as described below. 5. [O]ral surgery [is covered] for tumors or injuries to the jawbone or surrounding tissue and the initial stabilization and treatment of acute accidental trauma to sound, natural teeth provided within 48 hours of the accident [is also covered]."