*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0303p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CARL GAETH,

        *Plaintiff-Appellee,*

    *v.*

      No. 06-6490

HARTFORD LIFE INSURANCE CO.,

        *Defendant-Appellant.*

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 02-00568—Jennifer B. Coffman, Chief District Judge.

Submitted:  July 30, 2008

Decided and Filed:  August 19, 2008

Before:  BATCHELDER and GILMAN, Circuit Judges; ZOUHARY, District Judge.[*]

---

## COUNSEL

**ON BRIEF:**  Barry A. Chasnoff, AKIN, GUMP, STRAUSS, HAUER & FELD, San Antonio, Texas, Michael C. Small, AKIN, GUMP, STRAUSS, HAUER & FELD, Los Angeles, California, Robert L. Steinmetz, GWIN, STEINMETZ, MILLER & BAIRD, Louisville, Kentucky, for Appellant. Jeffrey A. Darling, REINHARDT & ASSOCIATES, Lexington, Kentucky, for Appellee.

---

## OPINION

---

    RONALD LEE GILMAN, Circuit Judge.  Carl Gaeth was employed as a sales manager at Oracle Corp. from 1986 until 1989.  As a result of serious medical conditions, he began receiving long-term disability payments in 1989.  Oracle subsequently discovered that Gaeth was operating an antique-lamp restoration business, and surveillance video showed him moving about without apparent difficulty.  The plan administrator, Hartford Life Insurance Co., determined that Gaeth was no longer totally disabled and terminated his benefits in 1997.

    Gaeth challenged that decision in court.  The federal district court found that Hartford's determination was arbitrary and capricious because it was not supported by any medical evidence of Gaeth's physical condition.  It therefore remanded the case to Hartford for further consideration.

---

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

1

The court also awarded attorney fees to Gaeth, even though it did not find that Gaeth is still entitled to disability benefits under the plan. Hartford has appealed only the award of attorney fees. For the reasons set forth below, we **VACATE** the district court's judgment awarding attorney fees and **REMAND** the case for reconsideration of that issue.

## I. BACKGROUND

### A.     Factual background

The basic facts of this case are undisputed by the parties. Gaeth was a sales manager for Oracle beginning in 1986. After experiencing a series of health problems, he was deemed totally disabled under Oracle's employee welfare benefit plan and was approved for long-term disability benefits in February of 1989. Oracle's plan is subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Hartford has the discretionary authority to make benefits determinations under the plan.

In 1995, Hartford approached Gaeth about the possibility of settling his disability claim with a lump-sum payment. During the course of pursuing the settlement, Hartford discovered that Gaeth had been operating an antique-lamp restoration business since 1991. Hartford suspected Gaeth of fraud and suspended his disability payments pending an investigation by the company.

The ensuing investigation consisted of interviewing Gaeth about his antique business and the income derived from it, reviewing his medical and financial records, and surveilling him at antique shows and at his place of business in an effort to document his physical capabilities. In his interviews with Hartford, Gaeth moved slowly and with considerable effort, consistent with records from his treating physician. But Hartford's investigators reported that 70 minutes of surveillance video, captured over the course of one week, showed Gaeth moving about, sitting, standing, carrying antique lamps, pushing and pulling a cart, and setting up and taking down his sales booths at antique trade shows, all without apparent difficulty. Gaeth also traveled long distances to attend antique shows, an activity that was inconsistent with his doctor's prior evaluations.

To explain his travel, Gaeth said that his van was customized to allow him to lie down during his trips. He also told Hartford that his business generated no income. Hartford's investigators, however, came to the opposite conclusion based on a copy of an automobile lease application indicating that Gaeth's monthly income exceeded $5,600, and information that an undercover investigator obtained by engaging Gaeth in conversation at an antique show.

In June of 1997, Hartford determined that Gaeth was "no longer totally disabled from performing the duties of his own occupation as of January 1, 1991—the date his own business was established." (Alterations omitted.) It terminated his disability benefits and demanded reimbursement for all payments made to him since that time. Gaeth disputed Hartford's determination, arguing that his business did not generate income and that Hartford did not have any evidence showing that he was no longer disabled with regard to his occupation as a sales manager.

Also in 1997, Hartford alerted the Kentucky Department of Insurance (DOI) of the company's suspicions regarding Gaeth's possible fraudulent conduct. The DOI investigated the matter and referred it for criminal prosecution in 1999. A grand jury subsequently indicted Gaeth on two counts of theft by deception, but the indictment was eventually dismissed without prejudice in 2002. State prosecutors have not refiled the indictment.

## B.     Procedural background

In December of 2002, Gaeth sued Hartford in Kentucky state court, asserting federal and state-law claims. His federal claims, brought under ERISA, challenged Hartford's determination that he was no longer totally disabled and therefore ineligible for disability benefits, and its determination that he was required to reimburse Hartford for prior payments. Hartford removed the case to federal district court.

The district court subsequently granted Gaeth's motion for summary judgment, concluding that Hartford's decision to terminate Gaeth's benefits was arbitrary and capricious because the company's investigation produced no medical evidence showing that Gaeth was able to return to his occupation as a sales manager. It further explained that "[r]eliance solely on surveillance (with an average of ten minutes of video per day) is not a reasonable basis for concluding that the plaintiff is now able to perform his prior work or that his activities are inconsistent with the restrictions imposed by his physicians."

The district court, however, did not find that Gaeth continued to be totally disabled, noting that the record contained "minimal objective medical evidence of [his] continued disability." It therefore remanded the case to Hartford for a further review of his eligibility for benefits. Although the court did not decide that Gaeth was entitled to benefits, it nevertheless awarded him attorney fees. Hartford filed a timely appeal of that decision. The parties agree that the only issue before us is the propriety of awarding attorney fees to Gaeth at this stage of the case.

## II.  ANALYSIS

## A.     Standard of review for awarding attorney fees under ERISA

A district court's award of attorney fees pursuant to 29 U.S.C. § 1132(g)(1) is reviewed under the abuse-of-discretion standard. *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005). "[A]n abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th Cir. 2006) (internal quotation marks omitted); *see also Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998) ("A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or uses an erroneous legal standard.").

"In an action by [an ERISA] plan participant, the district court, in its discretion, 'may allow a reasonable attorney's fee and costs of action to either party.'" *Moon*, 461 F.3d at 642 (quoting § 1132(g)(1)). "[O]ur circuit recognizes no presumption as to whether attorney fees will be awarded." *Foltice v. Guardsman Prods.*, *Inc.*, 98 F.3d 933, 936 (6th Cir. 1996).

We apply the following five-factor test, first set forth in *Secretary of the Department of Labor v. King*, 775 F.2d 666 (6th Cir. 1985), to determine whether a district court properly exercised its discretion in awarding fees under § 1132(g)(1):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moon*, 461 F.3d at 642 (citing *King*, 775 F.2d at 669). "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." *Id.* at 642-43.

In determining whether to award attorney fees to Gaeth, the district court did not cite the Sixth Circuit's *King* test. It instead applied the following five-factor test from the Second Circuit:

> (1) the degree of the offending party's culpability or bad faith, (2) the ability of the offending party to satisfy an award of attorney's fees, (3) whether an award of fees would deter other persons from acting similarly under like circumstances, (4) the relative merits of the parties' positions, and (5) whether the action conferred a common benefit on a group of pension plan participants.

*Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1981).

Despite the differences in phrasing, the factors set forth in both formulations of the test are largely the same. But a close reading reveals two material differences. The first difference relates to the "common benefit" factor. Under the Sixth Circuit's test, the fourth factor asks whether the plaintiff "*sought* to confer" a common benefit on other plan participants. *King*, 775 F.2d at 669 (emphasis added). In contrast, the Second Circuit's corresponding fifth factor does not look to "plaintiff's motive in bringing suit," but instead considers whether the "suit had the effect of conferring a common benefit." *Chambless*, 815 F.2d at 872. The other material difference is the alternative consideration under the Sixth Circuit's fourth factor of whether the case resolved a significant legal question regarding ERISA. That consideration is not contemplated by the Second Circuit's test. We address the district court's failure to fully analyze the fourth factor in Part II.B.4. below.

## B. Discussion

The district court determined that attorney fees are appropriate in this case after briefly reasoning that the termination of Gaeth's benefits was arbitrary and capricious, that Hartford has the ability to pay Gaeth's attorney fees, that a fee award might deter Hartford from making such unsupported decisions in the future, and that the deterrent effect of awarding fees could benefit not only Gaeth but other claimants. Hartford argues that all of the court's conclusions are erroneous. We will therefore examine the district court's analysis of each factor in turn.

### 1. Culpability or bad faith

In its first assignment of error, Hartford contends that the district court abused its discretion by failing to make an explicit finding that Hartford's decision to terminate Gaeth's benefits was either culpable behavior or made in bad faith. It also argues that the record does not contain any evidence that would support such a finding.

Hartford emphasizes the statement in *Moon* that "an arbitrary and capricious denial of benefits does not *necessarily* indicate culpability or bad faith." 461 F.3d at 643 (alteration omitted; emphasis added). But this court's caselaw by no means *precludes* a finding of culpability or bad faith based only on the evidence that supported a district court's arbitrary-and-capricious determination. *See, e.g.*, *id.* at 644-45 (finding that the plan administrator was culpable for the same reason that its rejection of a disability claim was arbitrary and capricious—that is, it adopted wholesale the opinion of a physician in its employ "who based his findings on selective information in the administrative record and did not examine [the claimant]").

The district court in the present case did not *explicitly* make a finding of culpability or bad faith. On the other hand, the court recited a five-factor test similar to *King* and then proceeded to analyze most of those factors, beginning with the statement that "Hartford's termination of the plaintiff's benefits was made with little support on the record, and the court finds that there is no reasoned explanation on the record for the decision." A fair reading of the court's discussion of this first factor makes clear that it found culpability on Hartford's part, and that the court weighed this

factor in favor of awarding attorney fees to Gaeth. We are therefore unpersuaded by Hartford's argument that the court's failure to use the word "culpability" is enough to constitute an abuse of discretion. The critical question is instead whether the court's determination that the first factor weighed in favor of awarding attorney fees is supported by the record.

This court has found a plan administrator to be culpable where the administrator terminated benefits based primarily on the opinions of doctors employed by the company's own claim department. *See Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 809-10 (6th Cir. 2002) (finding culpability where a plan administrator denied disability benefits based solely on the opinion of a physician in its employ, the latter having neither examined the claimant nor considered substantial evidence in the record indicating that the claimant was disabled); *Moon*, 461 F.3d at 644 (same). The disability determination made by Hartford in the present case was arguably based on even less competent evidence than that which was available to the plan administrators in the above cases.

Hartford might very well have had a good-faith basis for believing that Gaeth was no longer disabled. But it terminated his benefits without a single piece of current medical evidence regarding his physical condition as it relates to the occupation for which he had been deemed disabled, as the district court explained at length. Hartford is therefore culpable for making a benefits determination that was unsupported by competent medical evidence. Accordingly, we conclude that the district court did not abuse its discretion in weighing the first factor in favor of awarding attorney fees.

### 2.      *Hartford's ability to satisfy an award of attorney fees*

Hartford does not challenge the district court's conclusion that the company would be able to pay the attorney fees incurred by Gaeth. It argues instead that the court placed undue weight on this factor. The company quotes *Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 557-58 (6th Cir. 1987), in asserting that "a party's financial ability to pay a fee award, even if undisputed, 'should not be dispositive when examination of all other relevant factors indicates that fees should not be awarded.'"

*Firestone Tire* simply restates the general principle that this factor, like each of the *King* factors, is not dispositive. *See id.* (concluding that Firestone's undisputed ability to satisfy an award of attorney fees under ERISA did not justify such an award where all of the other *King* factors indicated that awarding fees was inappropriate); *see also Moon*, 461 F.3d at 642-43 (explaining that no single factor is dispositive). Furthermore, nothing in the district court's opinion indicates that it placed greater weight on this factor than on any other factor in the analysis, or that it considered this factor to be outcome determinative. The court simply stated the undisputed fact that Hartford would likely be able to satisfy the award. We therefore conclude that the district court did not abuse its discretion in weighing this factor in favor of awarding fees.

### 3.      *Deterrent effect of a fee award*

Hartford next argues that the district court erred in its determination that an award of attorney fees might deter the company "from making unsupported and poorly reasoned decisions in the future and encourage it to make more reliable inquiries before terminating disability benefits." The company does not challenge that finding; rather, its argument on this point is that the deterrence factor requires consideration of the deterrent effect on other plan administrators facing similar circumstances, but that the court considered the deterrent effect only on Hartford.

A review of Sixth Circuit caselaw supports Hartford's position. This court has consistently interpreted the deterrence factor as requiring consideration of a fee award's deterrent effect *on other plan administrators*. *See, e.g.*, *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996) (considering the deterrent effect of a fee award on "other plan administrators"); *Firestone*, 810 F.2d

at 557 (analyzing whether a fee award would "deter other employers"); *see also Hoover*, 290 F.3d at 809 (considering the deterrent effect on "other similarly situated defendants" *and* on the offending party).

The Sixth Circuit's opinion in *Moon*, 461 F.3d 639, is particularly instructive regarding the proper analysis under this factor. In *Moon*, the court concluded that the facts of that case—in which the plan administrator denied benefits based solely on the opinion of its own employed physician, who ignored record evidence of the claimant's disability and did not examine the claimant—"are not so unique that they fail to serve any deterrence value to other insurance companies under similar circumstances," and that the court's opinion in an earlier appeal of the same case "articulated important principles that all plan administrators should heed. For example, before terminating a plan participant's benefits, a plan administrator should ensure that the opinions upon which they rely to make their decisions to terminate are based on a thorough review of the administrative record." *Id.* at 645. The key question in analyzing this third factor is therefore whether the fee award would have a deterrent effect on other plan administrators.

Although the district court did in fact fail to explicitly make a finding regarding the deterrent effect of a fee award on others, its reasoning about the deterrent effect on Hartford leaves little doubt that the court on remand would make the same finding with respect to the administrators of other plans. And nothing in the record indicates that the deterrent effect on Hartford would not apply with equal force to them.

The company also argues that the deterrent effect of a fee award should not weigh *heavily* in favor of granting attorney fees because Hartford was allegedly not culpable and did not act in bad faith. In other words, it argues that the deterrent effect is related to the degree of culpability or bad faith found under the first factor.

This court has indeed taken the common-sense view that "fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing." *Foltice*, 98 F.3d at 937 (concluding that a plan administrator's lack of bad faith and "relatively slight" degree of culpability in arbitrarily rejecting a benefits claim did not present, for purposes of the third factor, "the sort of culpability that warrants punishment in [the claimant's] case or deterrence in others" (internal quotation marks omitted)). The plan administrator's challenged conduct in *Foltice*—which this court agreed did not warrant the imposition of attorney fees—was its erroneous interpretation of certain terms in a pension plan. *Id.* at 938.

Hartford, in contrast, did not err by incorrectly interpreting complex plan documents. Rather, it made a decision to terminate benefits without any supporting medical evidence. A deterrence measure is therefore arguably more appropriate here than it was in *Foltice*. In sum, we find no error in the district court's finding that Hartford's conduct warranted the award of attorney fees as a deterrent measure, and that this factor therefore weighs in favor of a fee award.

### 4.     *Conferring a common benefit on plan participants or resolving a significant legal question under ERISA*

The district court also found that "[a]lthough the instant action seeks to vindicate the rights of only one claimant, the deterrent effect could be beneficial to many." Hartford argues that the court erred by (1) finding a common benefit for other plan participants based on the deterrent effect on Hartford, and (2) failing to analyze whether the case resolved a significant legal question under ERISA.

The company contends that this court has "repeatedly declined to find [this] factor satisfied in cases, such as this one, that were brought by individual plaintiffs." But it cites only *Foltice*, where the plan administrator had determined that the claimant's situation did not fall within the

definition of the phrase "accident or sickness benefits" in the plan documents. 98 F.3d at 936. This court in *Foltice* affirmed the district court's determination that this factor weighed against imposing attorney fees on the plan administrator because the claimant, Foltice, did not seek to obtain a common benefit for all participants and beneficiaries of the plan at issue, and "most of the participants in and beneficiaries of the . . . plan stood to gain nothing from this lawsuit." *Id.* at 937. Although four other plan participants were in situations that were comparable to Foltice's, "the benefit realized by these four participants was 'incidental'" to Foltice's success. *Id.*

Gaeth responds by adopting the district court's view that he in fact obtained a common benefit for other plan participants—specifically, "the deterrent effect of insurers practicing and making arbitrary and capricious terminations of benefits." But he fails to cite any supporting authority for his position and provides no alternative reading of *Foltice*. Furthermore, this court's decision in *Moon*, 461 F.3d 639, undermines his argument—and the district court's finding below—that a deterrent effect alone constitutes a common benefit.

In *Moon*, as in the present case, the district court found that the plan administrator's rejection of a disability-benefits claim was not supported by competent evidence. *Id.* at 644. The claimant prevailed in obtaining a reversal of that determination as arbitrary and capricious, and then sought attorney fees under 29 U.S.C. § 1132(g)(1). On appeal, this court agreed with the district court's conclusion that the plan administrator was culpable and that awarding fees to the claimant would "deter other insurance companies from making the same arbitrary decisions as [the plan administrator] in the instant case." *Id.* at 645.

Thus the *Moon* claimant had, like Gaeth, arguably obtained a "common benefit" for all plan participants in the form of deterring the plan administrator from making similarly unreasonable decisions in the future. But with regard to the common-benefit factor, this court nevertheless concluded that the facts weighed *against* awarding attorney fees because the claimant "only sought [long-term disability] benefits for herself and did not seek to confer a benefit upon all plan participants." *Id.* This demonstrates that the deterrent-effect and common-benefit factors are separate inquiries, and also highlights the difference between this court's *King* test ("whether the party requesting fees *sought to confer* a common benefit," *King*, 775 F.2d at 669 (emphasis added)), and the Second Circuit's *Chambless* test ("whether the action conferred a common benefit," *Chambless*, 815 F.2d at 871).

Applying *Foltice* and *Moon* to the present case leads us to the conclusion that the district court erred in its analysis of this factor. Gaeth did not seek to obtain a common benefit for all of the participants in Oracle's plan. Furthermore, the record does not establish, and Gaeth does not argue, that any other participant in Oracle's plan was in the same position as Gaeth (i.e., having disability benefits terminated by Hartford without consideration of medical evidence), or that any other participant would obtain a redetermination of a similarly adverse benefits decision as a result of Gaeth's success in obtaining reconsideration of Hartford's termination decision. Accordingly, the common-benefit factor weighs *against* an award of attorney fees, and the district court erred in finding otherwise.

The district court also failed to consider whether this case resolved any significant legal questions regarding ERISA. That failure stemmed from the court's use of the Second Circuit's *Chambless* test rather than this court's *King* test, the latter including this consideration as an alternative finding under the fourth factor. Here, the parties' dispute was whether Hartford's decision to terminate Gaeth's benefits was arbitrary and capricious, a legal standard that has been analyzed repeatedly by this court. The merits of this case did not turn on the resolution of any difficult ERISA question, so that factor—had the district court applied the proper test and considered it—would clearly have weighed against awarding attorney fees. For the foregoing reasons, we

conclude that the district court abused its discretion in finding that the deterrence factor weighs in favor of Gaeth.

### 5. *Relative merits of the parties' positions*

Hartford's final argument is that the district court made no finding as to the relative merits of the parties' positions. That factor is part of both the Sixth Circuit and the Second Circuit tests, and the district court's failure to analyze this factor amounts to an abuse of discretion.

Although the district court found no objective medical evidence supporting Hartford's determination that Gaeth was able to return to his previous position, it noted, significantly, that the record contained "minimal objective medical evidence of [Gaeth's] continued disability." The record indeed leaves open the possibility that Hartford might ultimately prevail in showing that Gaeth is no longer totally disabled. Thus the merits of Gaeth's position are at best questionable as compared to the merits of Hartford's position, causing this factor to weigh against an award of attorney fees at this point in the proceedings.

Had the district court addressed the relative merits of the parties' positions under the fifth factor, it might well have decided that this factor weighs against a fee award at the present time. "Because no single factor is determinative, the court must consider each factor before exercising its discretion." *Schwartz v. Gregori*, 160 F.3d 1116, 1119 (6th Cir. 1998).

We further note that awarding attorney fees to Gaeth now could result in the incongruous situation of the party that ultimately wins nevertheless being required to pay the attorney fees of the losing party. To be sure, the express language of 29 U.S.C. § 1132 does not limit an award of attorney fees to the prevailing party. *See* § 1132(g)(1) (providing that "the court in its discretion may allow a reasonable attorney's fee and costs of action to *either* party" (emphasis added)). But the possibility that Gaeth could receive attorney fees from Hartford even if he ultimately loses his case underscores the importance of carefully analyzing the relative merits of the parties' positions.

Such a possibility also raises the question of whether a district court would always abuse its discretion by awarding attorney fees to a losing party, or to a claimant who has yet to obtain the sought-after award of benefits. We need not address that issue in the present case, however, because of our conclusion that the district court abused its discretion on other grounds; namely, by failing to fully analyze the *King* factors.

## C. Summary

The district court erred in its analysis under both the fourth *King* factor (common benefit or resolution of a significant legal question) and the fifth *King* factor (relative merits). We therefore conclude that the court abused its discretion in determining that Gaeth is entitled to an award of attorney fees at this time.

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the district court's judgment and **REMAND** the case for further proceedings consistent with this opinion.