NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0341n.06

Case Nos. 08-1607 & 08-2201

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Jun 07, 2010**
LEONARD GREEN, Clerk

FHARMACY RECORDS, *et al.*,                     )
                                                )
    Plaintiffs-Appellants,                      )    **ON APPEAL FROM THE**
                                                )    **UNITED STATES DISTRICT**
    v.                                          )    **COURT FOR THE EASTERN**
                                                )    **DISTRICT OF MICHIGAN**
SALAAM NASSAR, *et al.*,                        )
                                                )
    Defendants-Appellees.                       )
                                                )
_____         )

Before:  BATCHELDER, Chief Circuit Judge; SILER and GILMAN, Circuit Judges.

**ALICE M. BATCHELDER, Chief Judge.**  The plaintiffs in this copyright infringement action appeal the grant of summary judgment to the defendants, the dismissal of the action as a discovery sanction, and the denial of a post-judgment motion for recusal.  We affirm.

**I.**

Shelton Rivers, who calls himself the "Essman," claims that back in 2000 or 2001 he created a "rhythm line" or "beat," which he named "ESS Beats," and that at about that same time he assigned some portion of the rights to that beat to Fharmacy Records and Fharm I Publishing.  Rivers applied for a copyright in 2004, and the Copyright Office granted the copyright on May 5, 2005.

Meanwhile, according to Rivers and Fharmacy, the various defendants (recording artists and producers) infringed on the beat when they used it in the rap song "Shot Down," a track on rap artist DMX's platinum-selling album "Grand Champ," which was released in 2003.  To be more specific, Rivers contends that defendant Salaam Nassar, who claims to have created the beat himself, copied

the beat and has since passed it off as his own, collecting payment from DMX for it.

Rivers filed suit in federal court, claiming copyright infringement (among other claims since dismissed). Discovery was acrimonious, to say the least, and the district court ultimately concluded that the plaintiffs and their counsel had made numerous false statements, destroyed or hidden evidence, fabricated evidence, suborned perjury, and generally abused the legal process.

The defendants moved for summary judgment on the merits and for sanctions due to the discovery abuses. The district court granted both motions, holding "that the plaintiffs' complaint fails on the merits as a matter of law [and] the conduct of the plaintiffs and their attorney has been so egregiously improper and abusive that the ultimate sanction of dismissal is the only appropriate response." The plaintiffs filed several post-judgment motions, including a motion for judicial recusal, claiming that the district court judge was biased by his law school affiliation and his prior employment. The district court denied all of the post-judgment motions. The plaintiffs then filed a separate action seeking recusal of the judge, which was assigned to a different district court judge. That judge considered the claim anew and, in a 12-page opinion, explained that it was without merit and there was no basis upon which the original judge legitimately could have recused himself.

## II.

It is well settled in our circuit that we may affirm the district court's judgment on any basis supported by the record. *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 429 (6th Cir. 2006); *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002); *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir. 1981). Therefore, because we find that we can affirm the district court's dismissal on the basis of the plaintiffs' discovery abuses, we need not address the district court's decision on the merits.

A federal court has the inherent authority to dismiss a lawsuit if the plaintiff fails to comply with the rules or the court's orders governing discovery. *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991)). Our review of such a dismissal is for abuse of discretion. *Id*. at 516. "A district court abuses its discretion where it applies the incorrect legal standard, misapplies the correct legal standard, or relies upon clearly erroneous findings of fact." *Getsy v. Mitchell*, 495 F.3d 295, 310 (6th Cir. 2007) (en banc). Or, we must have a "definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008).

We have identified four factors — the "*Regional Refuse* factors" — that guide our review of a district court's decision to dismiss a party's lawsuit as a sanction:

(1) whether the party's [conduct] [was] due to willfulness, bad faith, or fault;

(2) whether the adversary was prejudiced by the dismissed party's conduct;

(3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and

(4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

*Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citing *Knoll v. American Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999)); *see Regional Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150, 155 (6th Cir. 1988) (introducing these factors); *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094 n.1 (6th Cir. 1994) (explaining "that the factors considered when reviewing a dismissal under Rule 41(b), Rule 37(b), or a court's inherent power are largely the same"). We have also explained

that, although "none of the factors is outcome dispositive, a case is properly dismissed by the district court where there is a clear record of delay or contumacious[1] conduct." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (quoting *Knoll*, 176 F.3d at 363).

We have held, as to the first factor, that "the imposition of inherent power sanctions requires a finding of bad faith," *First Bank*, 307 F.3d at 517 (citing *Chambers*, 501 U.S. at 50), "or conduct that is 'tantamount to bad faith,'" *id*. (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980)). We have held, for purposes of the second factor, that a defendant is prejudiced by a plaintiff's failure to cooperate in discovery when the defendant "waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide." *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997). As for the third factor, we have reversed the dismissal of certain cases where the district court failed to "put the derelict parties on notice that further noncompliance would result in dismissal," *Wu*, 420 F.3d at 644; *Freeland v. Amigo*, 103 F.3d 1271, 1279-80 (6th Cir. 1997); *Harris v. Callwood*, 844 F.2d 1254, 1256 (6th Cir. 1988), but as this is just one factor, we have also held that prior warning is not indispensable, *see United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002); *see also Link v. Wabash R.R.*, 370 U.S. 626, 633 (1962) (noting that a district court can, in some circumstances, "dismiss a complaint . . . even without affording notice of its intention to do so"). Finally, we have instructed courts to look first to an "alternative sanction [that] would protect the integrity of the [judicial] process," but we have "never held that a district court is without power to dismiss a complaint, as the first and only sanction, . . .

---

[1]"Contumacious is defined as perverse in resisting authority and stubbornly disobedient." *Schafer*, 529 F.3d at 737 (quoting Webster's Third New International Dictionary 497 (1986)) (quotation marks omitted).

and [we are] loath[] to require the district court to incant a litany of [] available lesser sanctions."

*Schafer*, 529 F.3d at 738 (quoting *Harmon*, 110 F.3d at 368) (quotation marks omitted). Although

we "understand this factor to require particular caution in the absence of contumacious conduct," a

district court's failure to articulate lesser sanctions "is not necessarily fatal." *Id*. (quoting *Harmon*,

110 F.3d at 368 ("[W]e do not assume that lesser sanctions were not considered simply because their

consideration is not articulated.")).

In the present case, the district court documented the plaintiffs' and their counsel's various

discovery abuses. The following is a concise and rather bland accounting of those abuses; the district

court provides far more detail in its opinion. The plaintiffs' counsel has tendered some explanations

for some of these, but not all, and the "explanations" that have been offered are far from persuasive

(and often a bit puzzling). The record reveals that the plaintiffs and their counsel:

1.   Promised to produce Rivers's original CD recording of the beat as proof of authenticity and date of creation, but failed to produce it. When compelled, they claimed it was lost.

2.   Promised to produce a zip disc containing the original copy of the beat as proof of authenticity and date of creation, but provided a disc that was blank. Experts established that the disc provided had been erased intentionally.

3.   Produced a Fharmacy-owned computer on which Rivers claimed to have saved an original copy of the beat on its hard drive and pointed to a file on that computer "dated" August 28, 2001, as proof of authenticity and date of creation. But an expert established that the computer file had actually been created in 2006 and backdated (Apple Macintosh files are numbered sequentially when they are saved and the files saved immediately before and after this one were *all* dated September 2006). An expert also established that the computer was manufactured in 2003 and the hard drive storing those files was manufactured in 2005.

4.   Produced computer files from a music producer named R.J. Rice as proof of authenticity and date of creation, claiming that Rivers had saved a copy of the beat to that computer in early 2001. But an expert established that a creation date for those files could not be verified and that severe "bleeding" of sounds and other irregularities in those versions led to the conclusion that the tracks were created from some other, non-original source.

5.   Offered a copy of an assignment agreement between Rivers and the Fharmacy parties, dated January 2001, as proof of the beat's date of creation. When the defendants challenged the authenticity of the photocopy, plaintiffs' counsel promised to produce the original, but failed to do so. When compelled to produce the original, counsel claimed that it was lost.

     Plaintiff Jeffrey Seaton, a co-owner of the Fharmacy entities, testified at his deposition that he had created the assignment-agreement documents on his mother's computer and that he had given the original signed documents to his counsel for safekeeping. The defendants sought access to the computer to attempt to recover the original document (and establish its date). Plaintiffs' counsel promised to produce the computer, but failed to do so. The defendants pressed for the computer and upon court order, Seaton claimed that he failed to provide the computer because he had searched the computer and the files were not there. When the court ordered further explanation for his failure to provide the computer, Seaton then claimed that the computer had been destroyed.

     Meanwhile, Seaton testified that two of the entities named in the "2001" agreement had not even been created until 2004 (Fharmacy Records Production Co. and Fharm I Publishing Co.), leading to the inference that the agreement had been fabricated later.

6.   Promised to produce a tape recording of a surreptitiously taped telephone conversation, but failed to do so. During deposition testimony, Rivers claimed that he had secretly taped a telephone conversation during which Nassar admitted to copying the beat, and further testified that he gave the tape to his counsel. Counsel promised to provide the tape to the defendants, but failed to do so. When compelled, counsel said the tape was lost.

7.   Submitted a declaration signed by music producer R.J. Rice in which Rice asserted that he had been present for the creation of the beat as it had occurred at his studio. Because Rivers had testified that he had been alone when he created the beat, and at home, the defendants questioned Rice about his declaration. After failing to identify the beat, Rice testified that Reed had prepared the declaration for his signature and he had only "half-read it."

8.   Proffered a man named Bernard Terry as a "Forensic Computer Expert" even though Terry himself testified that he is *not* a forensic computer expert. Terry also testified that he did not prepare the expert report himself; instead, he told Reed his findings over the phone, Reed drafted the report and read it back to Terry over the phone, and Terry later signed it for submission in this case. The report 12 times refers to Terry as a forensic computer expert.

9.   Finally, plaintiffs' counsel submitted a signed, sworn declaration (as proof of the beat's authenticity and date of creation) that Seaton had given him a CD containing an original copy of the beat back in 2001. According to counsel, he could not produce the CD because it had been lost. But, more importantly, Seaton testified that he did not meet counsel before 2003, Rivers testified that he did not meet counsel until 2004 or 2005, and William Allen (Fharmacy's other co-founder) testified that his first contact with counsel would have been in 2002 or 2003. All of this directly contradicted counsel's "declaration."

6

The district court introduced its analysis of the *Regional Refuse* factors by emphasizing that "this is not a case involving mere gamesmanship or garden variety discovery abuses. The actions of the plaintiffs and their attorney [Greg Reed] . . . are so egregious that they have forfeited their right to proceed in court. The plaintiffs clearly have no respect for the civil justice system, and it would be unfair to require the defendants to defend this case any further." The court continued:

> [T]he first factor is whether the misconduct by the plaintiffs and their counsel [Reed] results from 'willfulness, bad faith, or fault.' . . . [T]his factor is plainly satisfied. . . . [T]he plaintiffs and their attorney have conducted a campaign of fraud. . . . In addition to Mr. Reed's loss of the 'original' CD furnished by Seaton, Rivers's zip disk was intentionally wiped of data; Rivers lost the tape recording allegedly containing Nassar's confession; the Fharmacy computer that was allegedly used in 2001 did not even exist until 2003; that computer contained files that were intentionally backdated; the 2001 assignment document referenced entities that were not even formed until 2004; the original assignment documents were lost; the computer that was used to draft such documents was thrown away; and the R.J. Rice hard drive contained file dates that could not be verified. And this list does not even include the material inconsistencies in the plaintiffs' testimony, late disclosure of evidence, misrepresentation of evidence, and prevarications by Mr. Reed in his representations to opposing counsel. If this is not bad-faith litigation, nothing is.

> The second factor is whether the defendants have been prejudiced by the plaintiffs' misconduct and that element too has been satisfied. . . . Due to the conduct of the plaintiffs and their attorney, the defendants' right to rebut the plaintiffs' allegations has meant little because the evidence has either been lost, tampered with, or irretrievably compromised. There is simply no way that this case can go forward.

> The third factor . . . is whether the plaintiffs were warned that failure to cooperate could lead to dismissal. This is the one factor that does not clearly militate in favor of dismissal but, on balance, it is not dispositive. There is nothing in the record showing that the plaintiffs were warned by a judicial officer that dismissal was a possibility. However, this factor seems less relevant in a case such as this, where the conduct at issue is not merely contestable, but in contravention of basic notions of fairness and professional responsibility. A party does not need formal notice to know that spoliation of evidence and misrepresentations may lead to dismissal.

> The fourth and final factor is whether less drastic sanctions were imposed or considered before resorting to dismissal. . . . This factor also favors dismissal of the

instant case because lesser sanctions were imposed for earlier discovery violations and anything less than dismissal would be futile. That is, the evidence in this case has been so tainted that pushing onward to a decision on the merits . . . would be practically impossible.

For these reasons, the Court will grant the defendants' motion for dismissal pursuant to its inherent authority.

*Fharmacy Records v. Nassar*, 248 F.R.D. 507, 530-31 (E.D. Mich. 2008) (citations omitted).

Based on our careful review of the district court's opinion and the record as a whole, we find that the district court identified and properly applied the correct legal standard, and made a reasoned conclusion upon its weighing of the relevant factors. *See Getsy*, 495 F.3d at 310; *Gaeth*, 538 F.3d at 529. We conclude that the district court properly exercised its discretion in this matter.

Finally, the plaintiffs' claim that Judge Lawson should have recused in this matter is so blatantly without merit as to warrant no further discussion.

**III.**

For the foregoing reasons, we **AFFIRM** the district court's judgment.