NOT RECOMMENDED FOR PUBLICATION
File Name: 19a0160n.06

No. 18-1948

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KIMBERLY J. GUEST-MARCOTTE, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Apr 01, 2019 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| LIFE INSURANCE COMPANY OF NORTH | ) | ON APPEAL FROM THE |
| AMERICA; METALDYNE SALARY | ) | UNITED STATES DISTRICT |
| CONTINUATION PLAN; METALDYNE | ) | COURT FOR THE EASTERN |
| POWERTRAIN COMPONENTS, INC.; SHORT | ) | DISTRICT OF MICHIGAN |
| TERM DISABILITY INCOME PLAN OF | ) | |
| METALDYNE, LLC, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:    NORRIS, ROGERS, and THAPAR, Circuit Judges.

ROGERS, Circuit Judge.  Guest-Marcotte sought short-term disability benefits from the administrator of her former employer's ERISA plan, Life Insurance Co. of North America ("LINA").  After LINA denied her application for benefits, Guest-Marcotte appealed to this court, where last year we held that LINA's denial was arbitrary and capricious.  On remand, Guest-Marcotte sought attorneys' fees under 29 U.S.C. § 1132(g), but the district court denied her request.  The facts of this case, however, compel the conclusion that fees should have been awarded.

Guest-Marcotte suffers from Ehlers-Danlos Syndrome Type III ("EDS"), a rare genetic disease that is "medically known to cause frequent joint dislocations and subluxations along with chronic pain," and which does in fact cause Guest-Marcotte considerable pain.  *Guest-Marcotte v.*

No. 18-1948, *Guest-Marcotte v. Life Ins. Co. of North America, et al.*

*Life Ins. Co. of N. Am.*, 730 F. App'x 292, 303 (6th Cir. 2018). The defendants in this case do not dispute that Guest-Marcotte has EDS and suffers severe chronic pain as a result.

Guest-Marcotte worked for Metaldyne, LLC, from 2005 to 2013 and was covered by Metaldyne's Salary Continuation Plan. The Plan was administered by LINA. After Guest-Marcotte's diagnosis and consultation with various doctors, she applied for short-term disability benefits ("STD benefits") under the Plan. Under the Plan, a beneficiary is considered disabled "if, solely because of a covered Injury or Sickness, [she is] [u]nable to perform the material duties of [her] Regular Occupation; and [u]nable to earn 80% or more of [her] Covered Earnings from working in [her] Regular Occupation." *Id.* at 294. The employee "must provide the claims administrator, at [the employee's] own expense, *satisfactory* proof of Disability before benefits will be paid." *Id.* (emphasis added). Guest-Marcotte held a desk job at Metaldyne, but she provided evidence from her physicians that she was unable to perform the material duties of that occupation because of her condition. For example, her physicians asserted that she needed to "avoid repetitive stress," could not lift, pull, or push more than five pounds, and would "have to be able to take 'frequent breaks.'" *Id.* at 295.

Despite Guest-Marcotte's evidence of her disability, LINA denied her benefits after a cursory review by two case reviewers. *Id.* In its denial letter LINA wrote that Guest-Marcotte had failed to show a disability "of such severity that would preclude you from working in your own occupation." *Id.* This is not the language of the Plan, which defines a disability as a condition that would render a person "unable to perform the material duties" of her occupation, not "preclude [her] from working in [her] own occupation."

Guest-Marcotte appealed, twice. The first time around, she provided more medical evidence of her disability, including "numerous medical records" from her primary physician, Dr.

Kadaj, indicating that she "consistently complained of severe chronic pain," and that on one night both of her shoulders had popped out of place and the next day she was "having difficulty moving her right arm." *Id.* She also provided more evidence from Dr. Tinkle, a renowned expert on EDS who had submitted evidence in Guest-Marcotte's initial application for benefits. In this first appeal, Dr. Tinkle repeated his diagnosis and recommendations that Guest-Marcotte not "lift/push/pull objects of greater than 5 pounds [and should] avoid repetitive motions." *Id.* at 296. Guest-Marcotte also submitted evidence of her disability from her acupuncturist and physical therapist. *Id.* LINA again denied her application and "used the same erroneous definition of 'disability' that [it] had included in its first denial letter." *Id.* at 297. LINA "relied on Guest-Marcotte's failure to provide *objective* medical evidence," such as clinical examinations, when the Plan required only "satisfactory" evidence of a disability. *Id.* (emphasis added).

In her second appeal, Guest-Marcotte submitted even more documentation, as well as affidavits from Drs. Kadaj and Tinkle stating that Guest-Marcotte's condition significantly limited her ability to perform ordinary tasks, such as driving to work and typing. *Id.* at 298. For a third time, LINA denied her request and "used the same incorrect definition of 'disability'" in doing so. *Id.* at 299. Moreover, LINA's third denial letter relied on an incorrect reading of the Plan's evidentiary requirements. LINA wrote in the letter that "the clinical findings and test results do not document her physical impairments [and] [t]here was no clinical evidence that would demonstrate a functional loss and inability to perform her sedentary occupation." *Id.* (internal quotation marks omitted).

Meanwhile, after LINA's second denial, Metaldyne had terminated Guest-Marcotte's employment. The reason, according to Guest-Marcotte's doctors, was that she was "unlikely to recover fully/sufficiently to perform the functions of [her] position." *Id.* at 297. Thus, under

LINA's interpretation of Guest-Marcotte's medical record, she was not disabled, meaning (under a faithful interpretation of the Plan's definition) she was able to perform the material duties of her occupation. But according to her employer's interpretation of the same medical record, her employment should be terminated because she could not perform the material duties of her occupation.

Guest-Marcotte sued LINA (and Metaldyne), arguing that she was improperly denied benefits. After the case was removed to federal court, a magistrate judge recommended that Guest-Marcotte's claim be dismissed, and the district court adopted the magistrate judge's recommendation. *See Guest-Marcotte v. Metaldyne Powertrain Components, Inc.*, No. 15-cv-10738, 2017 WL 65062 (E.D. Mich. Jan. 6, 2017). Guest-Marcotte appealed that decision to this court.

We reversed the district court and remanded. Although review of a plan administrator's decision is highly deferential, we concluded that "LINA's review of Guest-Marcotte's benefits claim was arbitrary and capricious." 730 F. App'x at 301. LINA had "brush[ed] aside her claims of debilitating pain without first performing a physical exam"—an option that was plainly available under the Plan. *Id.* at 302. Put differently, "LINA had the option to conduct a physical examination; yet it elected to discount Guest-Marcotte's claims of disabling pain without exercising that option, even though it is undisputed that she has a hereditary disease known to cause chronic and severe pain, and she submitted a host of evidence indicating she in fact suffers from such pain." *Id.* at 301. We rejected LINA's legal argument for not conducting a physical examination as one that "distorts the language of the Plan" by effectively requiring proof of objectively observable limitations. *Id.* at 302. We proceeded to order a remand to "permit LINA

another chance to conduct a deliberate and principled review of Guest-Marcotte's claim." *Id.* at 303.

After our decision, the district court remanded the case to LINA on April 27, 2018. Less than a month later, with LINA's decision still pending, Guest-Marcotte filed a motion for attorneys' fees in the district court. Under ERISA, "the court in its discretion" may award attorneys' fees to a party, 29 U.S.C. § 1132(g), so long as that party achieved "some success on the merits," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). Although the district court noted that it was "undisputed that [King] achieved 'some success on the merits,' and therefore satisfies the threshold of eligibility for a fee award," it declined to award fees. *See Guest-Marcotte v. Life Ins. Co. of North America*, No. 15-cv-10738, 2018 WL 3436782, at *4 n.2, *7 (E.D. Mich. July 17, 2018).

In making this determination, the court weighed the five "*King* factors," so named for *Secretary of Department of Labor v. King*, 775 F.2d 666 (6th Cir. 1985):

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

2018 WL 3436782, at *4 (quoting *King*, 775 F.2d at 669). The district court noted that our ruling suggested some culpability on the part of LINA, but the court found that there was not a "high degree of culpability." *Id.* Further, the court reasoned that this purportedly low degree of culpability suggested that the deterrence effect of a fee award would be minimal, and that Guest-Marcotte did not seek to confer a common benefit on all plan participants. The court concluded that a fee award was not warranted, despite its admission that the second and fifth *King* factors weighed in Guest-Marcotte's favor. Guest-Marcotte now appeals that decision.

The facts of this case represent a paradigm case for when attorneys' fees are called for under 29 U.S.C. § 1132(g). This is not a case in which we determined on balance that the plan's decision was marginally arbitrary or capricious. Instead LINA denied benefits based on repeated and material misreading of the plan requirements. LINA did so in a case where even the employer, by its very termination of Guest-Marcotte, recognized that her medical impairments supported her inability to perform her duties. While LINA's misapplication of a non-existent objective-evidence requirement may not, on the facts of this case, have sunk to the level of bad faith, it is about as culpable as it otherwise could get. We review the district court's attorneys' fee denial for an abuse of discretion, a very deferential standard, but to the extent that an exercise of discretion inherently includes subsidiary legal determinations, those subsidiary legal determinations are reviewed de novo. *See, e.g.*, *Koon v. U.S.*, 518 U.S. 81, 100 (1996); *accord Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 476 (6th Cir. 2007). In this case LINA's error regarding the plan terms affected each of the legally relevant factors that the district court applied to its attorneys' fee decision, such that the overall denial could be upheld only by applying an unduly strict standard for granting fees. This then is one of the rare instances under § 1132(g) when a district court's denial of fees under this statute must be reversed.

Under the first *King* factor, LINA's conduct was highly blameworthy, and the district court's apparent conception as to the required degree of culpability affected its overall analysis. In three reviews of Guest-Marcotte's medical record, LINA persisted in inexplicably discounting the plain evidence of her disability, each time without opting to physically examine her. This was in spite of the fact that Metaldyne apparently found the same evidence of Guest-Marcotte's disability so compelling that it concluded that Guest-Marcotte was unable to continue in her employment. Moreover, Guest-Marcotte's underlying condition is undisputed. This is not akin to

a fibromyalgia, back pain, or chronic fatigue case where the beneficiary's inability to offer objective evidence raised reasonable doubt as to the beneficiary's disability. All involved agree that Guest-Marcotte has a serious genetic condition that is known to cause joint dislocations and severe, chronic pain. In the face of this known condition and statements from various medical professionals, including an EDS expert, that Guest-Marcotte would be unable to perform the material duties of her occupation, LINA three times relied on an incorrect reading of the Plan and the lack of "objective evidence" to deny Guest-Marcotte STD benefits.

Our previous decision did not depend entirely on the lack of a physical examination. *See Guest-Marcotte*, 2018 WL 3436782, at \*2. LINA's choice to forgo a physical examination was part of a string of actions that essentially prevented Guest-Marcotte from proving her disability. Throughout Guest-Marcotte's application and appeals, LINA continued to set the bar too high. LINA repeatedly found that Guest-Marcotte's considerable medical evidence did not show that she was "precluded" from working, or that she could not provide "objective" evidence of her disability, when, under the Plan, she did not need to show that she was "precluded" from working nor did she need to provide "objective" evidence. Declining to conduct a physical examination highlighted the unfairness of LINA's goal-post-moving. LINA rejected Guest-Marcotte's application because she did not include evidence that LINA itself declined to obtain. The lack of a physical examination was not a technical mistake that rendered a faithful decision-making process arbitrary. It was directly based on a marked legal error in the reading of the plan requirements.

The legally unsupportable nature of LINA's decision-making supports fees under the remaining *King* factors as well.[1] The need for deterrence (third *King* factor) is particularly clear

---

[1] The second *King* factor, defendant's ability to pay, is not at issue in this case.

in a case where LINA persistently applied a misreading of the applicable plan requirements to deny disability benefits. LINA's error implicates the fourth *King* factor because it rests on a misinterpretation of the legal requirements of the plan, not on something unique to Guest-Marcotte. Finally, the relative merits of the parties' positions (fifth *King* factor) weighs particularly strongly in favor of Guest-Marcotte in light of the clarity of her legal position under the plan.

We do not hold that fees are warranted whenever a disability denial is reversed as arbitrary and capricious, as difficult as it is to obtain a reversal under that standard. LINA repeatedly made a clear legal error in determining not to get a physical exam in the face of otherwise compelling evidence of disability.

Our review of the district court's attorney fee denial is of course for abuse of discretion, a very deferential standard. We recognize that the district court engaged in a thoughtful analysis. Our disagreement focuses on a legal difference as to the weight of relevant factors, and on the legal aspect of how egregious a disability denial must be to warrant fees. In that light, the district court's denial of fees amounted to a clear error of judgment.

The district court's denial of attorneys' fees is reversed.

THAPAR, Circuit Judge, dissenting. As a court of appeals, our main task is to review district courts. Standards of review are instructions for that task. These standards can operate as barriers (plain error), they can operate to cabin our review (abuse of discretion), or they can give us permission to take a fresh look (de novo). In the world of abuse of discretion, we do not review the district court to see if we agree with its result; rather, we simply look at whether the court exercised its discretion in a permissible manner. We may reverse only if we have a "definite and firm conviction" that the district court "made a clear error of judgment." *Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 939 (6th Cir. 1996).

In this case, the district court thoughtfully reviewed the ERISA plaintiff's request for attorney's fees. After balancing the required factors, the district court determined that fees were not warranted. Because the district court's decision did not reflect a clear error of judgment, I respectfully dissent.

We have the abuse-of-discretion standard for two fundamental reasons. First, district courts need broad leeway to make litigation-management decisions. District courts make countless discretionary calls in every case. If we were to review each one de novo, the wheels of justice would come to a halt. And even if we were somehow capable of reviewing each decision, we are not well-positioned to do so. While appellate courts get a snapshot of litigation, district courts live with cases from beginning to end. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 404 (1990). District courts get to know the lawyers, the parties, and the issues in a way a court of appeals never can. *See Pierce v. Underwood*, 487 U.S. 552, 559–60 (1988). We review cold records. They interact with real people. Thus, the abuse-of-discretion standard gives the district court the leeway it both deserves and needs to manage its cases.

Second, district courts' factual findings deserve deference. District courts find facts every day, and with that experience comes expertise. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75 (1985). This fact-finding expertise also applies to questions that require weighing several discrete facts together and drawing an overall conclusion from the whole—questions that are deeply case-specific. *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Village at Lakeridge, LLC*, 138 S. Ct. 960, 967–68 (2018). Though appellate courts have certain advantages because they are armed with more time and a panel of judges, those assets do not equip them to make discretionary calls from a cold factual record. Thus, for case-specific factual questions, appellate courts should not attempt to redo district courts' hard work by reviewing de novo—either in principle or in practice. *See Anderson*, 470 U.S. at 574–75.

Both principles apply here. To start with, Congress commands we defer: the ERISA statute says that "the [district] court *in its discretion may allow* a reasonable attorney's fee." 29 U.S.C. § 1132(g) (emphasis added); *see also Pierce*, 487 U.S. at 558. As long as the plaintiff has shown "some success on the merits" (an element not in dispute here), the district court has "broad discretion" to award, or not award, attorney's fees. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 254–55 (2010). This court has set out five factors to guide district courts in exercising that discretion:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985) (per curiam). These factors are not strict requirements; rather, they are "simply considerations representing a flexible approach." *First Tr. Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005); *see also Hardt*, 560 U.S. at 254–55,

255 n.8. Indeed, most of the factors are questions of degree that cannot even be answered "yes" or "no." Thus, the decision to award attorney's fees in an ERISA case (1) involves the management of litigation (attorney's fee awards); (2) is fact-dependent (most of the *King* factors are questions of fact); and (3) is made through a flexible multi-factored test (weighing the five *King* factors together and drawing a conclusion from the whole). In short, this is a model case for deferential appellate review.

Accordingly, we apply abuse-of-discretion review to the district court's factor-by-factor conclusions and to its ultimate weighing of those factors. *See Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 810 (6th Cir. 2002). Of course, if the district court makes a legal error, it necessarily abuses its discretion—we do not defer to a district court's erroneous interpretation of the law. But the scope of that rule is limited. For instance, it is a legal error when the district court misunderstands what the *King* factors mean or does not apply them at all. *See, e.g.*, *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 531–34 (6th Cir. 2008); *see also Lakeridge*, 138 S. Ct. at 968 n.7. It is *not* a legal error when we simply disagree with how the district court applied the *King* factors to the facts of the case. Otherwise, the legal-error exception would swallow up the rule and "abuse-of-discretion" deference would be meaningless.

When, as here, a district court thoroughly and thoughtfully applies the *King* factors to the facts of the case, it does not abuse its discretion. A short review of the district court's analysis proves the point.

*Degree of culpability*. The first *King* factor is "the degree of the opposing party's culpability or bad faith." 775 F.2d at 669. An ERISA defendant is not necessarily "culpable" because it made the wrong decision or even an "arbitrary and capricious" decision—some sort of deliberate misconduct is required. *See Moon v. Unum Provident Corp.*, 461 F.3d 639, 643 (6th

Cir. 2006) (per curiam). A defendant is culpable if it selectively reviewed the medical record or relied on incompetent/biased medical evidence but generally is not culpable if it simply misinterpreted the plan's requirements. *See id.* at 643–44; *see also Shelby Cty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 377 (6th Cir. 2009). Here, the district court found the latter; the plan administrator thoroughly reviewed Guest-Marcotte's evidence but misinterpreted the plan. Specifically, the plan administrator thought that under the plan, Guest-Marcotte had the burden to show objective evidence of a "functional impairment"—i.e., evidence that she could no longer perform her (relatively sedentary) job. R. 88, Pg. ID 3183–84. Based on that misinterpretation of the plan's requirements, the administrator concluded that (1) it did not need to conduct a physical examination because Guest-Marcotte had the burden of proof, and (2) her evidence of pain did not meet that burden, no matter how compelling and voluminous it was, because it did not directly speak to her ability to perform her job. In a sense, Guest-Marcotte and the plan administrator were talking past each other. Unlike some of this circuit's previous decisions, the plan administrator thoroughly (rather than selectively or biasedly) reviewed all of plaintiff's evidence, and the plan administrator's denial relied on a misinterpretation of the plan. *Contra Moon*, 461 F.3d at 643–44; *Gaeth*, 538 F.3d at 530–31. Thus, the district court reasonably concluded that the plan administrator was not culpable. Even if we might view the facts differently in the first instance, the district court's conclusion was not a "clear error of judgment." *Foltice*, 98 F.3d at 939. So the district court did not abuse its discretion.[1]

---

[1] Though some parts of the district court's analysis stated that the plan administrator was not "highly culpable[,]" it did not impose an improperly heightened culpability requirement. R. 88, Pg. ID 3184. Instead, the district court correctly stated the standard and ultimately concluded that the plan administrator's conduct "was not sufficiently culpable for [the culpability] factor to weigh in favor of a fee award." *Id.* We should not parse the district court's language to manufacture an abuse of discretion where there is none. *See Gaeth*, 538 F.3d at 530 ("We are therefore unpersuaded by [Defendant's] argument that the [district] court's failure to use the word 'culpability' is enough to constitute an abuse of discretion.").

*Ability to satisfy a fee award*. The second *King* factor is "the opposing party's ability to satisfy an award of attorney's fees." 775 F.2d at 669. The district court correctly found that this factor is not in dispute because the Defendants can satisfy a fee award.

*Deterrent effect*. The third *King* factor is "the deterrent effect of an award on other persons under similar circumstances." *Id.* The district court concluded that an award would not have a deterrent effect for two reasons. First, as the district court correctly observed, this factor "generally go[es] hand-in-hand" with culpability. R. 88, Pg. ID 3185. That is because a potential fee award will make intentionally misbehaving plan administrators think twice but will not prevent unintentional mistakes. *See Foltice*, 98 F.3d at 937. As explained above, the district court reasonably concluded that the plan administrator made an interpretive mistake and therefore was not culpable. So an award of attorney's fees here would not have a significant deterrent effect in the future. Second, the deterrent effect is less when, as here, a plaintiff's victory depends on the "unique facts of [her] case." *Shelby Cty.*, 581 F.3d at 377–78. Our prior decision in Guest-Marcotte's favor specifically distinguished her EDS Type III, which *necessarily* causes debilitating pain, from more common problems like "fibromyalgia or back pain[,]" which "can be difficult to diagnose objectively." *See Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 F. App'x 292, 302–03 (6th Cir. 2018). Because her disease necessarily causes "severe and chronic pain," she was not required to produce additional "evidence of how her pain impacted her ability to work." *Id.* at 303. Thus, the district court was within its discretion to conclude that an award of attorney's fees would not have a deterrent effect.

*Common benefit or significant legal question*. The fourth *King* factor is "whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA." 775 F.2d at 669. As the

district court correctly emphasized, the question is whether Guest-Marcotte "*sought* to confer a common benefit or *sought* to resolve a significant legal question," not whether she ended up doing so. R. 88, Pg. ID 3186; *see also Gaeth*, 538 F.3d at 533. Guest-Marcotte's arguments before the district court (and still on appeal) focus on the results of her victory, not what she initially sought. So her arguments miss the point. In any event, Guest-Marcotte sued only on her own behalf; there is no evidence that any other plan participants are "in the same position" as her, and she did not seek to resolve a significant legal question. *Shelby Cty.*, 581 F.3d at 378 (quoting *Gaeth*, 538 F.3d at 533). Thus, the district court reasonably concluded that this factor weighed against a fee award.

*Relative merits of the parties' positions*. The fifth *King* factor is "the relative merits of the parties' positions." 775 F.2d at 669. The district court correctly acknowledged that this factor weighs in favor of a fee award. Guest-Marcotte prevailed by overcoming the highly deferential arbitrary and capricious standard. That necessarily means her position was much more meritorious than Defendants' position. *See, e.g.*, *McKay v. Reliance Standard Life Ins. Co.*, 428 F. App'x 537, 546 (6th Cir. 2011).

In sum, the district court accurately described each *King* factor and reasonably applied each factor to the facts of the case. It concluded that three of the five factors weighed against awarding attorney's fees, and that one did not apply. While another judge could have come out differently, that is the nature of both balancing tests and abuse-of-discretion review. Standard-like balancing tests (versus sharp legal rules) do not yield clear right and wrong answers. *See* Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1180–81 (1989) (explaining that, unlike rules, "totality of the circumstances" standards have "no single 'right' answer" and "[o]nly . . . at the margins can an appellate judge say that [such a] determination *must* come out the other way *as a matter of law*"). This inevitable disagreement does not make what the district

court did an abuse of discretion—particularly since the court's conclusion was fact-laden and involved the management of the litigation in front of it.

Simply put, no clear error of judgment occurred here, so the district court's decision should stand. We should carefully adhere to standards of deference so that "abuse of discretion" does not become "de novo review clothed in deferential robes." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 235 (1991) (internal alterations and quotation marks omitted). I respectfully dissent.