NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0884n.06

No. 10-1350

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

*Dec 27, 2011*

LEONARD GREEN, Clerk

ROBERT WARNER, II, et al.          )
                                    )          ON APPEAL FROM THE
    *Plaintiffs-Plaintiffs*,          )          UNITED STATES DISTRICT
                                    )          COURT FOR THE WESTERN
v.                                  )          DISTRICT OF MICHIGAN
                                    )
DSM PHARMA CHEMICALS NORTH          )          O P I N I O N
AMERICA, INC., a Delaware Corporation )
                                    )
    *Defendant-Appellee.*          )


BEFORE:    BATCHELDER, Chief Judge; COLE, and COOK, Circuit Judges.

COLE, Circuit Judge.  Plaintiffs, eight individuals formerly employed by DSM Pharma Chemicals North America, Inc. ("DSM"), appeal the verdict reached by the jury in favor of DSM in their breach-of-contract action, arguing that the district court failed to give an appropriate jury instruction regarding a condition precedent to a contract under Michigan law.  In addition, Plaintiffs challenge a ruling denying them attorney's fees from DSM when the district court rejected DSM's arguments under ERISA.  We AFFIRM.

I.

In the fall of 2005, DSM made the decision to close its South Haven, Michigan, manufacturing facility ("South Haven facility").  At the time the decision was made to close the South Haven facility, DSM stated to its employees that it intended to clean and demolish the site, and that there was no opportunity to sell the facility to another operator.

DSM provided two different programs for its employees at the South Haven facility in the wake of the shut-down. First, DSM offered a severance plan for all employees terminated as a result of the facility shut-down, which provided for 12 to 26 weeks of base pay after the shut-down of the facility, based on length of service. In addition, DSM offered fifteen employees a retention bonus, as set out in an individualized Retention Letter provided to each employee. Under the terms of the Retention Letter, the targeted employees would receive a bonus of one year of base salary "provided that you are still employed by the Company in your [DSM] assignment until your employment is terminated on a date chosen by the Company as a result of the shutdown of the Company's South Haven facility." The purpose behind the Retention Letter was to encourage key employees to remain with DSM through the shut-down phase. All fifteen of the employees offered Retention Letters agreed to the terms.

Contrary to expectations, DSM began negotiations with a potential buyer for the South Haven facility in June 2006. On September 19, 2006, the South Haven facility was sold to the Albermarle Company. As part of this sale, Albermarle agreed "to offer employment to at least 92 percent of the active employees effective on the closing date." Included in that offer of employment were eight employees who had received and agreed to the Retention Letter (hereafter "the Plaintiffs"). Plaintiffs accepted employment with Albermarle, and as of the time of trial were still employed at the South Haven facility. DSM paid each employee who had signed a Retention Letter a pro-rated retention bonus, reflecting the amount of time that employees stayed on with DSM prior to the transition to Albermarle. DSM took the position, however, that as the South Haven facility was never shut down, it was not liable for the full amount of the bonus described in the Retention Letter.

Plaintiffs brought suit against DSM in Michigan state court for breach of contract, arguing that DSM was liable for the full amount of the bonus described in the Retention Letter. DSM removed the case to federal court, alleging both diversity of citizenship and that the Retention Letter constituted an employee benefit plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*. Prior to trial, DSM moved to voluntarily dismiss its counterclaims, including its claim that ERISA governs the Retention Letter. Plaintiffs consented to the dismissal of the claims, but argued that they were entitled to attorney's fees under ERISA for filing a frivolous claim. The magistrate judge issued a report recommending denying Plaintiffs' request for attorney's fees, and the district court adopted the recommendation and denied the award of attorney's fees.

Plaintiffs' case proceeded to a jury trial. During the jury instruction conference, Plaintiffs requested an instruction regarding conditions precedent under Michigan law. DSM argued that the instruction was improper, and the district court ultimately did not give an instruction on conditions precedent, instead, over DSM's objection, agreeing to the Plaintiffs' alternative request to argue the issue to the jury in closing arguments. The jury returned verdicts in favor of DSM with regard to each of the Plaintiffs.

Plaintiffs filed a timely notice of appeal, raising two issues. First, Plaintiffs argue that the failure to give a jury instruction on conditions precedent constituted reversible error. Second, Plaintiffs challenge the ruling that they are not entitled to attorney's fees stemming from the dismissal of the ERISA claim.

II.

A.

Plaintiffs argue that the failure to give a jury instruction on Michigan law concerning conditions precedent constitutes reversible error. Generally, "[t]he standard on appeal for a court's charge to the jury is whether the charge, taken as a whole, fairly and adequately submits the issues and applicable law to the jury." *Fisher v. Ford Motor Co.*, 224 F.3d 570, 575-76 (6th Cir. 2000) (quoting *United States v. Martin*, 740 F.2d 1352, 1361 (6th Cir. 1984)) (internal quotations omitted). In the case where a party claims that the trial court omitted a necessary instruction:

> [The] district court's refusal to give a jury instruction constitutes reversible error if: (1) the omitted instructions are a correct statement of the law; (2) the instruction is not substantially covered by other delivered charges; (3) the failure to give the instruction impairs the requesting party's theory of the case.

*Hisrich v. Volvo Cars of North America, Inc.*, 226 F.3d 445, 449 (6th Cir. 2000) (internal quotation marks and citations omitted). Contrary to Plaintiffs' contention, however, failure to give an instruction is reviewed for abuse of discretion. *See Fisher*, 224 F.3d at 576 ("there is no support in [prior precedent] for the proposition that [a] district court's failure to give a requested jury instruction is subject to *de novo* review") (internal quotation marks and citation omitted).

DSM argues that the Plaintiffs withdrew their request for a jury instruction during the charge conference, and thus the jury instruction issue should be subject to plain error analysis. The record is unclear on this point. Plaintiffs did state at one point that it was willing to withdraw the requested instruction in favor of the opportunity to argue the issue during closing arguments, but the district court later stated that it was sustaining DSM's objection to the instruction. Ultimately, for the

reasons discussed below, we conclude that under any standard of review it was not an error for the district court to decline to give the Plaintiffs' proposed instruction. Thus, we will assume that the Plaintiffs did not in fact withdraw their request for the instruction, and that the district court denied the request for the condition precedent instruction.

B.

Plaintiffs have argued, both at trial and in this appeal, that this case is an example of a deliberate frustration of a condition precedent. At the Jury Instruction Conference, the district court ultimately concluded that Plaintiffs' proposed instruction, incorporating their theory, should not be given in the case because the instruction failed to include language requiring Plaintiffs to prove that DSM was under a duty to make the condition occur. This determination is reviewed for abuse of discretion. *Fisher*, 224 F.3d at 576.

"A condition precedent. . . . is a fact or event that the parties intend must take place before there is a right to performance." *Harbor Park Market, Inc. v. Gronda*, 743 N.W.2d 585, 588 (Mich. Ct. App. 2007) (internal quotation marks and citations omitted). "If the condition is not satisfied, there is no cause of action for a failure to perform the contract." *Harbor Market*, 743 N.W.2d at 588. However, "when a contract contains a condition precedent, 'there is an implied agreement that the promisor will place no obstacle in the way of the happening of such event. . . .'" *Id.* at 588 (quoting *Mehling v. Evening News Assoc.*, 132 N.W.2d 25, 26 (Mich. 1965) (internal quotation marks and citations omitted)). "Where a party prevents the occurrence of a condition, the party, in effect, waives the performance of the condition." *Id.* at 589 (citing *Mehling*, 132 N.W.2d at 26).

However, under Michigan law, a party waives a condition precedent only if it is under an affirmative duty to cause the condition precedent to come to pass. In *Harbor Market*, the plaintiffs entered into a contract to buy a store from the defendants, subject to a condition precedent requiring the defendants' lawyer to approve the agreement. *Harbor Market*, 743 N.W.2d at 587. The defendants' lawyer did not approve the agreement with Harbor Market, recommending instead that the defendants sell to a different potential purchaser. *Id.* Harbor Market argued that the defendants, through their lawyer, interfered with the condition precedent by withholding approval, and thus were liable under the sale agreement. *Id.* The Michigan Court of Appeals rejected this construction, noting that nothing in the contract required the defendants' attorney to approve the deal with Harbor Market. "Since the parties failed to include an express limitation in the language of the condition precedent that restricted [the attorney's] approval authority, we will not judicially impose one ourselves." *Id.* at 589.

We addressed a similar issue in *Chase v. Matsu Manufacturing, Inc.*, 147 F. App'x 507 (6th Cir. 2005). In *Chase*, the plaintiff entered into an agreement with Matsu that would pay him commissions "as long as Mr. Chase continues to act as the exclusive sales agent for Matsu Manufacturing." 147 F. App'x at 509. The agreement contained a clause stating that "if Mr. Chase becomes inactive in the sales management activities surrounding Matsu Manufacturing, his commissions on new business will cease to be paid." *Id.* Matsu ultimately fired Chase and declined to pay the commissions, and Chase argued that this represented a frustration of the condition precedent. *Id.* at 509-10. As we held that Chase was a terminable at-will employee, we ruled that

Matsu was under no obligation to ensure that Chase was still employed and in a position to collect his commissions. *Id.* at 512. As a result, we enforced the condition precedent.

There is nothing in the Retention Letter that requires DSM to shut down the facility. As in *Harbor Market* and *Chase*, DSM was under no affirmative duty to make sure the condition precedent occurred that would trigger the Retention Letter. Plaintiffs' proposed jury instruction that simply discussed frustration of conditions precedent, without discussing whether DSM was under a duty to cause those conditions to occur, was an incorrect and misleading statement of Michigan law. Therefore, it was not an abuse of discretion for the district court to decline to give the instruction. *Hisrich.*, 226 F.3d at 449.

III.

Plaintiffs also argue that the district court erred in approving the recommendation of the magistrate judge to deny the award of attorney's fees. ERISA, 29 U.S.C. § 1132(g)(1), provides that "in any action under the subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." *See Secretary of Dept. of Labor v. King*, 775 F.2d 666, 669 n.5 (6th Cir. 1985) (quoting the statute). The decision of the district court to grant, or to decline to grant, attorney's fees, is reviewed for abuse of discretion. *Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 441 (6th Cir. 2006)

The magistrate judge recommended that, because the court found that ERISA did not govern the dispute between Plaintiffs and DSM, ERISA could not be used as the basis for awarding attorney's fees. However, there is support for Plaintiffs' contention that fees may be awarded even if the court finds that ERISA does not govern the dispute. *See Moore*, 458 F.3d at 445-46. Even so,

the district court held that fees were unwarranted even if ERISA did apply. "[O]ur circuit recognizes no presumption as to whether attorney's fees will be awarded" to the prevailing party in an ERISA action. *Foltice v. Guardsman Products, Inc.*, 98 F.3d 933, 936 (6th Cir. 1996) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1301-02 (6th Cir. 1991)). To determine if attorney's fees are appropriate, we consider the *King* factors, which are:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Foltice*, 98 F.3d at 936-37 (quoting *King*, 775 F.2d at 669). The *King* factors are not statutory, and so should be looked at holistically with no one factor "necessarily dispositive." *Foltice*, 98 F.3d at 937.

The *King* factors do not support an award of attorney's fees. Plaintiffs focus on the "degree of culpability or bad faith" factor, and argue that fees are warranted because the DSM's ERISA claims were made in bad faith and with an intent to force Plaintiffs to spend money unnecessarily. The magistrate judge concluded that DSM's ERISA claims were not vexatious, and nothing in the record would suggest that the magistrate judge was incorrect. (Rep. and Recom., Dist. Ct. Docket No. 83, at 5.) Instead, DSM's original position that ERISA applied to the claim appears "no more devoid of merit than that of any other losing litigant." *Foltice*, 98 F.3d at 938 (quoting *Armistead*, 944 F.2d at 1304). Simply making a losing legal argument is not enough to trigger the obligation to pay fees under 29 U.S.C. § 1132(g)(1). The lack of any evidence of deliberate misconduct or

improper motives by DSM also means that relative positions of the parties are no different than any other case where one party advanced a claim that was ultimately rejected by the district court, and that there would be no deterrent effect on DSM. While it is true that DSM could pay the fees if ordered to do so, prior cases have considered this factor "more for exclusionary than for inclusionary purposes." *Gribble v. CIGNA Healthplan of Tennessee, Inc*., 36 F.3d 1097, 1994 WL 514529 at *4 (6th Cir. 1994) (unpublished table decision). Thus, there is no basis for awarding fees under *King*, and the district court did not abuse its discretion.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court regarding the jury instruction and the denial of attorney's fees.