**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 15a0167n.06

Case Nos. 13-2484/14-1047

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
*Mar 03, 2015*
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TRUSTEES OF DETROIT CARPENTERS FRINGE BENEFIT FUNDS, | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR |
| v. | ) ) | THE EASTERN DISTRICT OF MICHIGAN |
| PATRIE CONSTRUCTION CO., FRANCESCO WOODWORK, INC., and ANDREA M. BERCICH, | ) ) ) | |
| Defendants-Appellees. | ) ) | OPINION |

BEFORE: MERRITT, GIBBONS, and DONALD, Circuit Judges.

**BERNICE BOUIE DONALD**, Circuit Judge. Plaintiffs—the Trustees of the Detroit Carpenters Fringe Benefit Funds (the "Trustees")—appeal from the district court's dismissal of their claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, and the Michigan Building Contract Fund Act ("MBCFA"), Mich. Comp. Laws §§ 570.151-570.153. The Trustees contend that the district court erred: (1) in determining that the Trustees' amended complaint lacked sufficient factual content setting forth an alter-ego operation to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6); (2) in dismissing claims unrelated to alter-ego status; and (3) in failing to consider additional record evidence beyond the Trustees' amended complaint. Defendants Patrie Construction Co.

("Patrie"), Francesco Woodwork, Inc. ("Francesco"), and Andrea M. Bercich ("Bercich") cross-appeal from the district court's denial of their requests for attorney fees and/or sanctions.

Because the Trustees' complaint does not plausibly allege an alter-ego operation, we **AFFIRM** the district court's Rule 12(b)(6) dismissal of all claims against Francesco and Bercich. However, because the complaint states viable claims against Patrie that do not depend on alter-ego status, we **REVERSE** the district court's dismissal of those claims and **REMAND** them for further determination. Moreover, because the Trustees did not assert their claims in bad faith and did not unreasonably or vexatiously multiply the instant litigation, we **AFFIRM** the district court's denial of attorney fees and/or sanctions.

## I.

Plaintiffs are a voluntary association of several trust funds in Michigan, each of which was established under the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. §§ 141-197, and ERISA. Patrie incorporated in Michigan on November 27, 1968, "[t]o carry on and conduct a general building supply and building business . . . ."[1] Francesco—incorporated in Michigan on April 21, 1992—manufactures and supplies millwork. Following her husband's death in 2007, Bercich became the sole owner of Patrie and Francesco. During the instant litigation, Bercich was in the process of winding down the operations of these companies for economic reasons.

On October 28, 1992, Patrie entered into a collective bargaining agreement ("CBA") with the Michigan Regional Council of Carpenters.[2] During the relevant dates alleged in this case, the active CBA was the 2009-2012 State of Michigan Carpenters Independent Contractors

---

[1] Patrie initially incorporated as "Patrie Carpentry Co.," but amended its name in 1988 to its current name, "Patrie Construction Co."

[2] Although the original CBA is not in the record, Patrie conceded that it was a signatory to the original CBA.

Agreement. The CBA required signatories to pay fringe-benefit rates—categorized by job title and by county—for work "consisting of the milling, fashioning, joining, assembling, erecting, fastening or dismantling of all materials of wood, plastic, metal, fiber, cork, or composition, and all other substitute materials." The CBA also prohibited signatory independent contractors from subcontracting any covered work to any party not bound by the CBA.

On March 5, 2012, the Trustees filed a complaint against Defendants under the LMRA, ERISA, and the MBCFA. The complaint alleged that Patrie and Francesco "are one and the same, constituting a single employer, with each being the alter ego of the other." The complaint further alleged that Defendants: (1) failed to cooperate with audits as required under the CBA and ERISA; (2) used or appropriated funds that should have gone toward fringe-benefit contributions, in violation of the MBCFA and ERISA; and (3) failed to pay outstanding fringe-benefit contributions, in violation of the CBA and ERISA.

**A.**

On January 22, 2013, Defendants moved to dismiss the Trustees' complaint as time-barred[3] and for failure to state a claim, or, in the alternative, for summary judgment. The Trustees objected to Defendants' summary-judgment claim as premature because of ongoing discovery, and Defendants withdrew their summary-judgment claim on February 25, 2013. That same day, the Trustees responded to the motion to dismiss, attaching to their response an extensive list of exhibits, including numerous business records of Patrie and Francesco. The Trustees cited these documents in support of their assertion that the companies were alter egos of one another. Defendants replied on March 20, 2013.

---

[3] Under ERISA, breach-of-fiduciary-duty claims and claims for recovery of unpaid benefits are subject to a six-year limitations period. *See* 29 U.S.C. § 1113; *Mich. United Food & Commercial Workers Unions v. Muir Co.*, 992 F.2d 594, 597-98 (6th Cir. 1993).

On April 30, 2013, the district court granted in part and denied in part Defendants' motion to dismiss. Specifically, the court found that the Trustees failed to allege sufficient facts demonstrating when their ERISA claims accrued. The court, however, denied Defendants' request for dismissal of the Trustees' MBCFA claim. The court dismissed the Trustees' ERISA claims without prejudice and ordered the Trustees to submit an amended complaint detailing when the ERISA claims accrued.

The Trustees filed an amended complaint on May 30, 2013. The amended complaint alleged that the Trustees became aware of Patrie's and Francesco's alter-ego operation in December 2011, when Patrie allegedly subcontracted covered carpentry work to Francesco on a project at the White Lake Rehab Center. On July 23, 2013, Defendants again moved to dismiss the Trustees' claims on statute-of-limitations grounds and for failure to state a claim, or, in the alternative, for summary judgment.[4] The Trustees responded on August 26, 2013, and Defendants replied on September 5, 2013.

On October 3, 2013, the district court granted Defendants' motion to dismiss. Although the court recognized that the Trustees "are not required to provide overly detailed allegations," it nevertheless found that the Trustees' alter-ego "allegations merely recite the bare elements of the ERISA claims." Specifically, the court stated:

> The Complaint contains five paragraphs that essentially reiterate the same legal conclusion: that Patrie and Francesco operate . . . as alter egos to avoid their obligations under the CBA. The Court is not required to accept these legal conclusions and declines to do so. . . . Plaintiffs fail to allege any facts regarding what information Plaintiffs obtained to alert them that Patrie was avoiding financial obligations through the operation of Francesco. There are no allegations regarding specific employees who worked for both companies, dates, times, covered work performed by

---

[4] The district court declined to consider the defendants' summary-judgment motion during the pendency of discovery.

> Francesco employees, or any factual allegations relating to the alleged illegal operation of Francesco. A reading [of] the entirety of the allegations fails to raise any inference that Patrie and Francesco operated as alter ego companies in violation of the CBA.

The court also dismissed the Trustees' remaining MBCFA claim, finding that it "necessarily depend[ed]" on the vitality of the ERISA claims. The court entered judgment in favor of Defendants, and the Trustees timely filed a notice of appeal.

**B.**

On October 30, 2013, Defendants moved for costs and attorney fees totaling $42,385.25. The Trustees responded in opposition on November 18, 2013, and Defendants replied on December 3, 2013. The district court held a hearing on December 12, 2013. At the hearing, the court stated:

> [I]n terms of the attorney fees, under the King[5] test and looking at those factors, I think that this case . . . gave me pause, and when I have pause about a case then right away I'm in a mind frame that tells me it is not frivolous because I have to really take time to consider it. I thought that the complaint was not well pled. . . . [B]ut I do . . . believe that there was a reasonable basis for you to file this complaint. . . . [T]he Court finds that this matter was not brought in bad faith. . . . [C]learly the plaintiff can satisfy the award of attorney fees. . . . I don't think that this is going to prevent plaintiff from filing another lawsuit if it felt it had a basis nor would it discourage it from filing a lawsuit. The fourth factor . . . [does not] really . . . appl[y] here. And the fifth factor . . . neither favors one side or the other. It appears to me that the first factor, truly the degree of the opposing party's culpability . . . is the factor that stands out, and it stands I believe in the plaintiff's favor, and the Court therefore is not going to award attorney fees.

---

[5] *See Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 670 (6th Cir. 1985) (per curiam).

Following the hearing, the district court granted Defendants' request for $199.50 in costs and denied their request for attorney fees and/or sanctions. Defendants timely filed a notice of appeal.

## II.

We first address the district court's Rule 12(b)(6) dismissals. We then address the district court's denial of attorney fees and/or sanctions.

## A.

We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 402-03 (6th Cir. 2014). The Court construes the complaint in the light most favorable to the plaintiff and accepts all factual allegations as true. *Id.* at 403. However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)) (internal quotation marks omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Determining whether a

complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

*1.*

We must first resolve whether the Trustees' amended complaint alleged sufficient factual content in support of their alter-ego contentions to survive a motion to dismiss under Rule 12(b)(6). The Trustees argue that the district court, by citing the amended complaint's lack of factual specificity, applied the wrong standard. The Trustees further assert that they have alleged sufficient facts to allow a court to draw a reasonable inference that Patrie and Francesco were operating as alter egos in order to evade their obligations under the CBA and under ERISA. Defendants respond that the Trustees' alter-ego allegations were merely a formulaic recitation of the elements of an ERISA claim. While not wholly conclusory, we agree with Defendants that the allegations in the amended complaint do not adequately plead the existence of an alter-ego operation.

The alter-ego doctrine is an equitable doctrine that prevents employers from evading their obligations under a CBA "by changing or altering their corporate form." *Trs. of Detroit Carpenters Fringe Benefit Funds v. Indus. Contracting, LLC*, 581 F.3d 313, 317-18 (6th Cir. 2009) (quoting *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986)) (internal quotation marks omitted). "The doctrine operates to bind an employer to a collective bargaining agreement if it is found to be an alter ego of a signatory employer." *Id.* at 318. It applies in two contexts: (1) where a "new entity begins operations but is merely a disguised continuance of the old employer," *id.* (quoting *NLRB v. Fullerton Transfer & Storage Ltd., Inc.*, 910 F.2d 331, 336 (6th Cir. 1990)) (internal quotation marks omitted); and (2) in "double-breasted operations," i.e., "where two or more coexisting employers performing the same work are in fact one business,

separated only in form." *Id.* (quoting *Fullerton Transfer*, 910 F.2d at 336) (internal quotation marks omitted). The test for determining whether two companies are alter egos is "whether the two enterprises have substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership." *Id.* (quoting *Fullerton Transfer*, 910 F.2d at 336) (internal quotation marks omitted).

The Trustees first argue that the district court improperly applied a heightened summary-judgment standard to a motion to dismiss. This argument fails. As stated by the district court, "[a]lthough Plaintiffs are not required to provide overly detailed allegations, a recitation of the bare elements of their claims along with legal conclusions mandates dismissal of the Amended Complaint." This was precisely the correct standard to apply. Although the Supreme Court's decision in *Twombly* does not "require heightened fact pleading of specifics," it *does* require that a complaint contain "enough facts to state a claim to relief that is plausible on its face"—i.e., to "nudge[]" the claim "across the line from conceivable to plausible."[6] 550 U.S. at 570. We have interpreted *Twombly* to require complaints to "contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)) (internal quotation marks omitted). Therefore, in this case, the district court correctly emphasized the amended complaint's lack of factual support allowing the plausible inference of an alter-ego relationship.

The Trustees next argue that their amended complaint "includes the facts necessary to allow the Court to draw a reasonable inference that the defendant is liable for the misconduct

---

[6] We have extended the application of the pleading standards set forth in *Twombly* to a wide array of contexts, including ERISA cases. *See Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 n.2 (6th Cir. 2008) (collecting cases); *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (applying *Twombly* in a breach-of-fiduciary-duty case under ERISA).

alleged (operating an alter-ego to evade the CBA obligations)." A fair reading of the amended complaint—taking all factual allegations, but not legal conclusions, as true—undermines the Trustees' argument. In support of their alter-ego contentions, the Trustees' amended complaint alleges, in its entirety, that:

> 4. Patrie Construction Co., and Francesco Woodwork, Inc., share management.
> 5. Patrie Construction Co., and Francesco Woodwork, Inc., share equipment.
> 6. Patrie Construction Co., and Francesco Woodwork, Inc., share facilities.
> 7. Patrie Construction Co., and Francesco Woodwork, Inc., share employees.
> 8. Patrie Construction Co., and Francesco Woodwork, Inc., share customers.
> 9. Patrie Construction Co., and Francesco Woodwork, Inc., share owners.
> 10. Patrie Construction Co., and Francesco Woodwork, Inc., are both engaged in the commercial carpentry business.
> 11. Patrie Construction Co., and Francesco Woodwork, Inc., are one and the same, constituting a single employer, with each being the alter ego of the other.
> . . . .
> 13. Andrea M. Bercich was involved with a Michigan company known as Francesco Woodwork, Inc., a business which engaged in the commercial construction industry. In such capacity, and upon information and belief, Andrea M. Bercich was involved in, and took part in, the day-to-day affairs and operations of, and maintained control of Francesco Woodwork, Inc.
> 14. Andrea M. Bercich was an owner, officer, and/or individual otherwise involved with a Michigan corporation known as Patrie Construction Co., a business which engaged in the commercial construction industry. In such capacity, and upon information and belief, Andrea M. Bercich was involved in, and took part in, the day-to-day affairs and operations of, and maintained control of Patrie Construction Co.
> . . . .
> 19. Plaintiffs became aware that Patrie Construction Company was operating an alter-ego operation with Francesco Woodwork, Inc., in violation of ERISA and its collective bargaining agreements with the Union, on the White Lake Rehab Center in December of 2011, (the "White Lake Project").

20. Plaintiffs became aware that Patrie Construction Company was operating an alter-ego operation with Francesco Woodwork, Inc. to evade its fringe benefit obligations under its collective bargaining agreements with the Union in December of 2011, in violation of ERISA and its collective bargaining agreements with the Union.

21. Plaintiffs became aware that employees of Patrie Construction Company were performing covered carpentry work on jobs as employees of Francesco Woodwork, Inc., on Patrie Construction Company jobs at the direction of Patrie Construction Company in December of 2011, to allow Patrie Construction Company to avoid paying fringe benefits to the Plaintiffs for all covered carpentry work performed pursuant to Patrie Construction Company's collective bargaining agreements with the Union, in violation of ERISA and its collective bargaining agreements with the Union.

22. Plaintiffs became aware in December of 2011, that Patrie Construction Company was sub-contracting covered carpentry work on jobs, including the White Lake Project, to non-union carpentry contractors to avoid paying fringe benefits to the Plaintiffs for covered work performed by the non-union sub-contractors in violation of Patrie Construction Company's collective bargaining agreements with the Union, in violation of ERISA.

"[G]eneralized and conclusory allegations regarding common ownership, employees, management, control, and decisionmaking . . . . are essentially a recitation of the legal standard and are plainly insufficient to state a claim of alter ego status." *Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 15 (2d Cir. 2014). Statements such as "Patrie . . . and Francesco . . . share management," without more, are prototypical "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678; *see also id.* at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Similarly, Paragraphs 13, 14, and 19-22 of the amended complaint do not plausibly suggest an alter-ego operation. These paragraphs allege that Bercich had an ownership stake in Patrie and an unspecified involvement in Francesco, and that an unspecified number of Patrie employees performed some amount of carpentry work for Francesco on one project on a

single occasion. However, they do not describe what degree of ownership or control Bercich exercised over each company. They do not suggest how many Patrie employees performed covered work for Francesco or whether it was under Bercich's supervision. And they do not provide more than a single instance of a shared customer or project. *Cf. Road Sprinkler Fitters Local Union No. 699 v. Dorn Sprinkler Co.*, 669 F.3d 790, 796 (6th Cir. 2012) (finding no alter-ego operation where companies shared at most nine of 250 customers). Nor does the amended complaint allege that the financial affairs of Patrie and Francesco were significantly intertwined. *Cf. Fullerton Transfer*, 910 F.2d at 340-41; *see also Metal Lathers Local 46 Pension Fund v. River Ave. Contracting Corp.*, 954 F. Supp. 2d 250, 257-60 (S.D.N.Y. 2013) (citing "extensive allegations regarding the connections" among the alleged alter-ego entities, including specific employees straddling both companies, common customers, and checks made out to "cash" that the defendants allegedly used to pay the wages of employees who performed covered work that was not reported to the union). In other words, something more is required to nudge the Trustees' alter-ego claim from the realm of the conceivable into the realm of the possible. *Twombly*, 550 U.S. at 570.

At bottom, the Trustees allege only a claim that some number of Patrie employees performed work for Francesco similar to their Patrie jobs on one occasion at a single work site. To allow this part of the case to proceed would permit alter-ego claims to proceed solely because a company's operations and personnel had some contact with another company. The amended complaint does not, as it must, plausibly allege "*substantially identical* management, business, purpose, operation, equipment, customers, supervision and ownership." *Indus. Contracting, LLC*, 581 F.3d at 318 (emphasis added) (internal quotation marks omitted). And without a plausible claim that Francesco is an alter ego of Patrie, the amended complaint does not allege

grounds for subjecting Francesco to the obligations of the CBA. *See, e.g.*, *Cariaga v. Local No. 1184 Laborers Int'l Union of N. Am.*, 154 F.3d 1072, 1075 (9th Cir. 1998).

Finally, the Trustees assert that the district court should have considered additional evidence in the record in making its ruling on the motion to dismiss. Specifically, the Trustees point to numerous exhibits submitted in connection with their response to Defendants' first motion to dismiss, including tax returns, financial statements, emails, and invoices and other payments. The Trustees argue that this additional evidence collectively establishes that Patrie and Francesco shared ownership, management, business purpose, facilities, equipment, and customers, and that Patrie subcontracted work to Francesco to avoid fringe-benefit payments required under the CBA. We reject this argument.

In considering a Rule 12(b)(6) motion, a district court cannot consider matters beyond the complaint. *Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 399 (6th Cir. 2012) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)); *see also Emerson v. Novartis Pharm. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) ("'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." (alteration in original) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991))). "If the district court does consider evidence outside the complaint, it effectively converts the motion to dismiss to a motion for summary judgment." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (quoting *Winget*, 537 F.3d at 576) (internal quotation marks omitted); *see also Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 487 (6th Cir. 2009) (per curiam) (noting that a court's conversion of a motion to dismiss into a motion for summary judgment should be done with caution). The district court would then be required to give all parties "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

This Court has recognized that it may consider items appearing in the record of the case, including exhibits, without converting a Rule 12(b)(6) motion into a motion for summary judgment, but only "so long as they are *referred to in the complaint* and are central to the claims contained therein." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (emphasis added) (quoting *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008)) (internal quotation marks omitted). Here, the amended complaint did not refer to any of the record evidence cited by the Trustees in their briefing on appeal. Thus, the district court appropriately limited its Rule 12(b)(6) inquiry to the four corners of the amended complaint.

We affirm the district court's dismissal of the Trustees' alter-ego claims, and thereby, all claims against Francesco.

*2.*

We must next consider whether the district court erroneously dismissed ERISA claims against Patrie that were unrelated to the Trustees' alter-ego claims. The Trustees argue that the district court erred by stating that, "[i]n order for Plaintiffs' claims to survive the motion to dismiss, the Amended Complaint must plausibly allege that Patrie and Francesco engaged in a double breasted operation to avoid Patrie's obligations under the CBA." They argue that their ERISA claims against Patrie are "separate and distinct from the . . . alter-ego claims," and that the district court should not have dismissed them under that umbrella. Defendants respond that, as with the alter-ego claims, the Trustees failed to provide factual support for any remaining claims and, consequently, the district court properly dismissed them. We find that the amended complaint plausibly suggests some liability on the part of Patrie.

The first claim the Trustees assert that the district court erroneously dismissed under the alter-ego umbrella relates to Patrie's alleged failure to comply with auditing requests. We agree.

Section 1059 of ERISA "imposes a clear duty on an employer to maintain adequate records," requiring employers "to furnish to benefit plans the information needed for the plans' fulfillment of their reporting duties." *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 695 (6th Cir. 1994) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 573 (1985)) (internal quotation marks omitted). We have recognized a right to audit as enforceable under 29 U.S.C. § 185. *See Trs. of Asbestos Workers Local Union No. 25 Ins. Trust Fund v. Metro Insulators, Inc.*, 902 F.2d 1569 (6th Cir. 1990) (per curiam) (unpublished table decision). The Trustees' amended complaint alleges (1) that the CBA entitles them to audit Patrie's books and records; (2) that the Trustees made an audit request on February 24, 2012; and (3) that, despite the Trustees' demands, Patrie has refused to permit the audit. That suffices to survive a motion to dismiss, even if this claim may later fail at the summary-judgment stage. *Cf. id.*[7]

We also agree with the Trustees that the amended complaint allows a reasonable inference that Patrie was delinquent on its fringe-benefit contributions by subcontracting covered carpentry work to non-union subcontractors (perhaps Francesco). This claim could survive even if the evasion of the CBA was not so widespread, and the intermingling of the companies not so thorough, as to trigger alter-ego status. Assuming a violation of the CBA, this conduct would be actionable under 29 U.S.C. §§ 185, 1132, and 1145. *See Brown-Graves Co. v. Cent. States, Se. & Sw. Areas Pension Fund*, 206 F.3d 680, 683 (6th Cir. 2000). Therefore, while the Trustees' auditing and unauthorized-subcontracting claims against Patrie may not withstand summary judgment, we are convinced that the district court should not have thrown them out based on the insufficiency of the Trustees' alter-ego allegations.

---

[7] Defendants' arguments on appeal—i.e., that the Trustees did not give them enough time to comply with the audit and that an annual audit of Patrie already took place—are more suitable for a motion for summary judgment.

*3.*

Finally, we consider whether the district court erred in dismissing the Trustees' breach-of-fiduciary-duty claim and MBCFA claim against Bercich. The Trustees argue that "dismissal of the alter-ego claims should not have resulted in the dismissal of the [MBCFA] and ERISA Fiduciary Duty claims against Andrea M. Bercich that flowed through the individual claims against Patrie." Defendants respond that the amended complaint "merely make[s] a formulaic recitation of the elements of the [MBCFA] claim." We find that although the Trustees have stated plausible claims against Patrie itself, they have not adequately alleged Bercich's personal liability under either federal or state law.

Regarding the ERISA claim, the amended complaint provides no facts supporting Bercich's status as a fiduciary under ERISA. *See Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 482 F. App'x 67, 69-70 (6th Cir. 2012) (per curiam) (rejecting a claim that an owner of a company with unpaid contributions was a fiduciary where the record showed nothing more than possession of plan assets). And federal courts generally have not found corporate officers or shareholders personally liable under 29 U.S.C. § 1145 unless the plaintiff demonstrates that the corporation is an alter ego of the individual defendant, that traditional veil-piercing principles apply, or that the individual explicitly joined the collective bargaining agreement in her individual capacity. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 734-35 (6th Cir. 2003); *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 36-37 (2d Cir. 1994); *Scarbrough v. Perez*, 870 F.2d 1079, 1082-84 (6th Cir. 1989); *Mass. Laborers' Health & Welfare Fund v. Starrett Paving Grp.*, 845 F.2d 23, 25-26 (1st Cir. 1988) (Breyer, J.). Nothing in the amended complaint addresses any of these conditions.

Nor does the amended complaint state a claim against Bercich under the MBCFA. Although the MBCFA is a penal statute, "a civil cause of action for a violation of its provisions has been recognized for years." *Shafer Redi-Mix, Inc. v. Craft*, 414 B.R. 165, 172 (W.D. Mich. 2009) (citing *DiPonio Constr. Co. v. Rosati Masonry Co.*, 631 N.W.2d 59, 62 (Mich. Ct. App. 2001)). The elements of a cause of action under the MBCFA are as follows:

> (1) the defendant is a contractor or subcontractor engaged in the building construction industry, (2) a person paid the contractor or subcontractor for labor or materials provided on a construction project, (3) the defendant retained or used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project.

*Id.* (quoting *DiPonio*, 631 N.W.2d at 62) (internal quotation marks omitted). Without plausible allegations that Francesco served as Patrie's alter ego, the Trustees cannot hope to satisfy all of these elements. Their viable claim for the right to an audit of Patrie's books does not necessarily imply that Bercich was paid for labor or materials or that she wrongfully retained funds. And even the allegations that Patrie subcontracted carpentry work on the White Lake Project in violation of the CBA fail to satisfy the fifth element; the subcontracting claim necessarily implies that non-Patrie laborers were the ones owed payment, not those represented by the Trustees. The district court therefore did not err in dismissing the MBCFA and breach-of-fiduciary-duty claims against Bercich.

In sum, we affirm the district court's dismissal of the Trustees' claims against Francesco and Bercich. The amended complaint's alter-ego contentions do not satisfy the pleading requirements set forth in *Twombly*, *Iqbal*, and Federal Rule of Civil Procedure 8. However, we reverse the district court's dismissal of the Trustees' claims against Patrie regarding failure to comply with auditing requests and unauthorized subcontracting.

**B.**

Defendants challenge the district court's denial of attorney fees and/or sanctions. We review for abuse of discretion a district court's award or denial of attorney fees and expenses, as well as its determination of sanctions under either Rule 11 or 28 U.S.C. § 1927. *Rentz v. Dynasty Apparel Indus., Inc.*, 556 F.3d 389, 395 (6th Cir. 2009); *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996). "An abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. Kelsey-Hayes Co.*, 750 F.3d 546, 559 (6th Cir. 2014) (quoting *Harlamert v. World Finer Foods, Inc.*, 489 F.3d 767, 773 (6th Cir. 2007)) (internal quotation marks omitted). In determining whether a district court's fact-driven decision on attorney fees was "reasonable," this Court applies a "highly deferential standard of review." *Id.* at 559-60; *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (explaining that deference to a district court's fee-award decision "is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters").

*1.*

We must first determine whether the district court abused its discretion in denying attorney fees under ERISA, 29 U.S.C. § 1132(g)(1). That section provides that, "[i]n any action under this subchapter . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." We examine the following five factors to determine whether a district court abused its discretion regarding a claim for attorney fees under § 1132(g)(2):

> (1) the degree of the opposing party's culpability or bad faith;
> (2) the opposing party's ability to satisfy an award of attorney's

fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Shelby Cnty. Health Care Corp. v. Majestic Star Casino, LLC*, 581 F.3d 355, 376 (6th Cir. 2009) (quoting *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642 (6th Cir. 2006) (per curiam)); *accord King*, 775 F.2d at 669 (adopting the five-factor test). "No single factor is determinative, and thus, the district court must consider each factor before exercising its discretion." *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008) (quoting *Moon*, 461 F.3d at 642-43) (internal quotation marks omitted). There is no presumption in the Sixth Circuit that attorney fees "should ordinarily be awarded to the prevailing plaintiff." *Majestic Star Casino*, 581 F.3d at 376-77 (quoting *First Trust Corp. v. Bryant*, 410 F.3d 842, 851 (6th Cir. 2005)) (internal quotation marks omitted).

Defendants argue that the Trustees brought this action in bad faith after learning "that, due to economic conditions, defendants were ceasing business operations." Defendants further argue that the Trustees have the financial wherewithal to pay an attorney-fee award, that the Trustees should be deterred from filing future lawsuits devoid of factual support, and that the merits of the parties' positions weigh in Defendants' favor. The Trustees respond that they had a reasonable belief in the basis for their claims, acted in good faith in pursuing them, and "would have prevailed on the merits had they been allowed to proceed with their claims and complete discovery." They further assert that an award of attorney fees would reduce the amount of benefits available to other beneficiaries, would have a "chilling effect" on the Trustees' ability to pursue alter-ego actions, and would not confer a benefit on all participants in an ERISA plan. In

light of the highly deferential standard of review, we affirm the district court's denial of attorney fees.

The district court expressly considered all of the *King* factors in making its attorney-fee determination, appropriately noting that no single factor is determinative. Regarding the first factor, the district court found that the Trustees had "a reasonable basis . . . to file [the] complaint," taking into account, inter alia, "the common ownership, . . . the same building, [and] some of the same employees working different capacities." We are not left with a definite and firm conviction that the district judge made an error of judgment in weighing this factor in favor of the Trustees. Indeed, the Trustees' counsel submitted an affidavit sufficiently detailing why he believed the Trustees had a legitimate claim—i.e., that information from a former Patrie employee led to a pre-complaint investigation. *Cf. Firestone Tire & Rubber Co. v. Neusser*, 810 F.2d 550, 557 (6th Cir. 1987) ("[W]e note that the affidavit of plaintiff's attorney indicates his belief that his client was justified in instituting litigation on this matter."). Moreover, the district court expressly noted that, although the Trustees' complaint "was not well pled," it also was "not frivolous" and required some thought. The determination that the Trustees were not culpable in pursuing this litigation was not an abuse of discretion. *See Warner v. DSM Pharma Chems. N. Am., Inc.*, 452 F. App'x 677, 681 (6th Cir. 2011) ("Simply making a losing legal argument is not enough to trigger the obligation to pay fees under 29 U.S.C. § 1132(g)(1).").

Regarding the second factor, the district court found—and the Trustees do not dispute—that "the [Trustees] can satisfy the award of attorney fees." However, this factor is relevant "more for exclusionary than for inclusionary purposes." *Id.* at 681-82 (quoting *Gribble v. CIGNA Healthplan of Tenn., Inc.*, 36 F.3d 1097 (6th Cir. 1994) (per curiam) (unpublished table decision)) (internal quotation marks omitted).

As for the third factor, the district court found that an award of attorney fees would not "prevent [the Trustees] from filing another lawsuit if [they] felt it had a basis." On appeal, the Trustees argue that such an award would chill future alter-ego claims, given "[t]he complexity and cost of this type of an action." Defendants argue that the Trustees *should* be deterred from pursuing this type of action, characterizing it as a "fishing expedition." The district court's decision on this factor was not an abuse of discretion. As an initial matter, the district court properly considered whether an attorney-fee award would have a deterrent effect not just on the Trustees, but also on "other persons under similar circumstances." *Cf. Gaeth*, 538 F.3d at 531 ("This court has consistently interpreted the deterrence factor as requiring consideration of a fee award's deterrent effect *on other plan administrators*."). Moreover, because the district court correctly found that the Trustees did not bring this lawsuit in bad faith, a fee award is even less appropriate for deterrent purposes. *See Foltice v. Guardsman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1996) ("[F]ee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing.").

Next, the district court found that the fourth factor did not apply in this case. The parties do not dispute this point. In a case like this, where a fee-award claimant "seeks benefits only for himself, [this Court] generally ha[s] found the common-benefit factor to weigh against an attorney-fee award." *Majestic Star Casino*, 581 F.3d at 378 (citing *Gaeth*, 538 F.3d at 533).

Finally, the district court found that the fifth factor—the relative merits of the parties' positions—favored "neither . . . one side or the other." Not surprisingly, the parties diametrically disagree regarding the relative merits of their respective positions. In any event, the district court's determination was not an abuse of its discretion. As this Court has noted, the simple fact that one party "ultimately prevailed does not weigh in favor of an award of attorney fees,"

especially where, as here, the case involved "closely contested issues." *Id.* Indeed, we have restored the Trustees' claims against Patrie. And like the losing party in *Majestic Star Casino*, the Trustees' claims against Francesco and Bercich were not brought in bad faith and were "no more devoid of merit than [those] of any other losing litigant." *Id.* (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1304 (6th Cir. 1991), *abrogated on other grounds by M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926 (2015)).

On balance, we are not left with "the firm and definition conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Gaeth*, 538 F.3d at 528-29 (quoting *Moon*, 461 F.3d at 643) (internal quotation marks omitted). We therefore affirm the district court's denial of attorney fees under § 1132(g)(1).

### 2.

The same conclusion follows with respect to the district court's refusal to award attorney fees under 28 U.S.C. § 1927. Under that statute, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees unreasonably incurred because of such conduct." Fee awards under § 1927 are not appropriate unless "an attorney knows or reasonably should know that a claim pursued is frivolous." *Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012) (per curiam) (quoting *Tareco Props., Inc. v. Morriss*, 321 F.3d 545, 550 (6th Cir. 2003)) (internal quotation marks omitted). As discussed at length above, the district court did not abuse its discretion in finding that the Trustees did not bring their claims in bad faith and that the claims were "not frivolous." Moreover, the Trustees sought discovery pursuant to a magistrate judge's order. Despite Defendants' arguments to the contrary, it is unclear how the Trustees' petition for a show-cause order, motion to compel discovery, and opposition to a stay

of discovery were unreasonable or vexatious rather than acceptable litigation tactics. The district court did not abuse its discretion in declining to award attorney fees under § 1927.

*3.*

Finally, we examine whether the district court abused its discretion in declining to sanction counsel for the Trustees under Rule 11 of the Federal Rules of Civil Procedure. Rule 11 sanctions may be awarded only if the Trustees' "conduct in the litigation was objectively unreasonable," or if the Trustees "did not have a reasonable basis for making [their] claim[.]" *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 510 (6th Cir. 2014). As previously discussed, neither of these characterizations applies to the Trustees' conduct in this litigation. Therefore, the district court did not abuse its discretion in declining to impose Rule 11 sanctions. *Cf. id.* ("Montell's conduct during litigation has not been objectively unreasonable, her claims have not been frivolous but rather based on a reasonable basis, and her attorneys did not unreasonably and vexatiously multiply the proceedings.").

**III.**

For the foregoing reasons, we **AFFIRM** the district court's Rule 12(b)(6) dismissal of the Trustees' claims against Francesco and Bercich and **AFFIRM** the district court's denial of Defendants' request for attorney fees and/or sanctions. However, we **REVERSE** the district court's dismissal of the Trustees' non-alter-ego claims against Patrie for failure to comply with auditing requests and unauthorized subcontracting, and **REMAND** the case for further consideration of those claims.

**MERRITT, Circuit Judge, concurring in part and dissenting in part.**  I agree that the judgment below in this case should be reversed and the case remanded.  My problem is that my colleagues seem to want to exclude from the audit to be undertaken below any of the books and records of Francesco, the alleged "alter ego entity" affiliated with Patrie and wholly owned by Bercich.  In my view the limitation of the audit narrowly to the books and records of Patrie only is simply contrary to the language and the intent of the collective bargaining agreement.

The agreement executed by Bercich for Patrie states on its face in paragraph 5.4, entitled "Alter Ego/Successor Entities," that "subterfuge" by the signatory is a potential problem and that "all" the terms and conditions of the contract "shall be applicable" to an "alter ego entity."  It seems plain that in light of the "subterfuge" concern and the "audit" requirements of the contract that the books of the affiliated company, Francesco, should be open to inspection and audit.  The complaint specifically alleges in paragraphs 20 and 21 that Bercich and Patrie used Francesco as an alter ego to "evade its fringe obligations," explaining that it did so on a particular job in "December of 2011, to allow Patrie Construction Co. to avoid paying fringe benefits to the plaintiffs . . . ."

The collective bargaining agreement expressly applies not only to employer signatories like Patrie, but also to "any other business entity . . . wherein the Employer (including its . . . owners . . .) . . . exercises . . . any significant degree of ownership, management, or control." Section 5.4.  Bercich (as Patrie's owner) and Francesco (as an affiliated business entity owned by Bercich) are thus subject to the same auditing regime as Patrie by the terms of the agreement whenever they take part in "work of the type covered by this Agreement at the site of a construction project."

Therefore, it seems obvious to me from the agreement that upon remand the plaintiffs should be entitled to inspect the books and records of the alleged "alter ego entity." The refusal by Bercich to allow a complete audit of either company is suspicious and may be a partial cause of the plaintiff's failure to be able to fully plead their statutory alter ego claims. It is unclear to me why my colleagues seem to think that the alter ego claims are over and should no longer be considered. The alter ego claims have been the main point of this case from the beginning. A remand seems beside the point if the books of Bercich's affiliated company—the alleged alter ego—is off limits.